M. A. Lipschultz, Plaintiff-Appellee, v. So-Jess Management Corp., an Illinois Corporation, Defendant-Appellant.

Gen. Nos. M–51,780, 52,061, 52,062.

First District, First Division.

November 27, 1967.

 Af-
firmed.

George B. Collins, of Chicago, for appellant.

Weinstein, Myer and New, of Chicago (M. J. Myer and Arthur Berlin, of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

Plaintiff confessed judgment on a lease for rent which accrued after defendant had vacated the leased premises. The trial court opened the judgment to permit the defendant to assert its defense of constructive eviction and, after a nonjury trial, confirmed the judgment. Defendant appeals. Appeals Nos. 52,061 and 52,062, which involved judgments for subsequent rent accruals, have been consolidated with the instant appeal for disposition.

On appeal, defendant contends (1) the plaintiff was guilty of the first breach of contract of lease, and cannot, therefore, enforce the provisions of the contract which he first breached; (2) the trial court erred in admitting settlement correspondence and in considering the motives of defendant in terminating the tenancy; and (3) there was a complete failure of proof because the lease was not introduced into evidence and the amount due thereon was not proved, and this requires a new trial.

Plaintiff contends (1) the defendant failed to prove acts or circumstances constituting a constructive eviction; (2) the defendant did not vacate the premises with

diligence and failed to establish a causal connection between the conditions alleged and the abandonment; and (3) plaintiff was not compelled to prove either the lease or the rent claimed.

The lease, dated December 7, 1962, covered the entire third floor of a building at 178 West Randolph Street, Chicago. It was for a term of two and one-half years, commencing February 1, 1963, and ending July 31, 1965. The use specified in the lease was "offices in connection with the insurance business of the Lessee."

A rider attached to and made a part of the lease included:

> "22. Lessor will level and install asphalt tile floors of a color to be selected by Lessee."

and

> "26. Lessor will install the necessary duct work and a package heating and air conditioning unit with thermostatic control on the premises of the Lessee. This unit will be connected to the electrical system of the Lessee, and all maintenance and repairs to this system will be borne by the Lessee."

Defendant vacated the premises on November 30, 1964, and the instant judgment by confession was entered on January 6, 1965. The complaint shows that it was for rent for the months of December 1964 and January 1965.

The motion of defendant to open the judgment and defend was supported by an affidavit of Sheldon Strongin, its president. In part, the affidavit stated that notice was given to plaintiff on February 27, 1964, and April 2, 1964, that "the asphalt tile floorings" were in need of repair; that on August 13, 1964, September 24, 1964, and October 12, 1964, letters were written informing plaintiff

"of the necessity to vacate the premises because of inadequate heating and air conditioning and continuing unsafe and hazardous condition of the flooring which plaintiff had heretofore assured defendant was repaired"; and that on December 3, 1964, "defendant again wrote to plaintiff's agent and indicated that because of the heretofore named unsafe flooring and heating problems, it had vacated the premises which are the subject matter of this lease on December 1, 1964."

At the trial on the merits, the court properly ruled that the burden of proof was on the defendant. The witnesses for the defendant consisted of its president and a general contractor who visited the premises during the period in question. The witnesses for plaintiff consisted of the building manager and the general contractor who had subcontracted the work for the installation of the tile floor and the ventilating system.

The testimony showed that an asphalt material called "underlayment" was poured over the uneven oak floor to provide a level base, on top of which the tile was laid, and that lessor installed a self-contained ventilating system for circulating warm or cool air.

As to the floor, defendant's president testified that after a few months' occupancy, the tile disintegrated over large areas, and defendant put up obstacles so that people wouldn't trip over broken tile. Defendant's contractor testified that the floor installation was faulty, and the floor was falling apart.

Plaintiff's building manager testified that about a year after defendant moved in, a hole in the floor, one inch deep and three-quarters of an inch around, was repaired. He stated, "The other tiles on the floor were in pretty sad shape; there seemed to be ridges in the tile."

Plaintiff's contractor testified that early in 1964 he saw two areas in which the tile was broken, with pieces missing. The larger area could not have exceeded three

square feet, and the smaller was less. The balance of the floor showed ridges and ordinary wear and tear. While on the premises of defendant, he saw filing cabinets with casters or small steel wheels being moved about the office. He stated this would cause deterioration of the asphalt tile.

As to the heating and air conditioning, plaintiff's manager admitted receiving complaints from defendant about heating but not about the air conditioning. In the winter of 1963, he visited the premises and saw the rheostat read 68°. He turned it up to 75° and left. He did not recall receiving oral complaints after that.

Defendant's contractor testified that there was a 5-ton Fedders air conditioning unit on the third floor, and the blower on the unit was too small to adequately distribute the flow of warm or cold air. Plaintiff's contractor testified, "In my opinion, based upon my experience, the unit's capacity, distribution system, input, fresh air intake, was and is sufficient for the size and type of premises in question. I had occasion to visit the premises after the unit was installed."

A series of letters were admitted into evidence as plaintiff's exhibits 1 through 6. Defendant objected to exhibits 3, 4 and 6. Exhibit 1, dated August 13, 1964, was a letter from defendant to plaintiff, which states: "A situation has arisen which necessitates the surrendering of our space in the above caption quarters. Although our lease runs until June 30, 1964 [July 31, 1965], we will probably vacate on or about October 30, 1964. Therefore, I wish to know as to your attitude on the possibility of subleasing on your part of said space and or a settlement of our existing lease with you on a compromise basis."

Exhibit 2, a letter from plaintiff to defendant, dated August 18, 1964, acknowledges exhibit 1 and states plaintiff had no objection to subletting the premises to a qualified tenant, and that although plaintiff had other

unrented space, plaintiff would list defendant's space with other brokers and show the space to prospective tenants.

Exhibit 3, a letter from defendant to plaintiff, dated September 24, 1964, states: "Since we will no longer have need for the third floor space at 178 W. Randolph after November 1, it would be desirable for us to try to work out a settlement on the balance of our lease and release said space to you for re-rental. Kindly let me know as to a settlement figure which would be reasonable within your own gracious perspective."

Exhibit 4, a letter dated October 8, 1964, from plaintiff to defendant, acknowledges receipt of exhibit 3 and states: "[I]f we could find a prospective tenant we would be glad to work out some arrangement with you."

Exhibit 5, a letter from defendant to plaintiff, dated October 12, 1964, states: "In answer to your letter of October 8, 1964, I have a suggestion that we settle the lease we have on your third floor at 178 West Randolph for the amount equal to $3,500. I feel that upon said settlement, we shall release said space to you for re-leasing. Any rent should be profitable to you on the overall picture and yet reduce our obligation on space which we have no further need for whatsoever. . . . The decision to surrender this space has come about because of inadequate heating and air conditioning sufficient to keep full crew functioning in 100% of space for business purposes, and further, the continuous unsafe and hazardous condition of the floor which has caused personnel of our company personal injury even after frequent requests by this company informing you of the condition of said floor and demands that you put it in safe condition."

Exhibit 6, a letter dated October 28, 1964, from plaintiff to defendant, in answer to exhibit 5, states: ". . . your offer of $3,500.00 for settlement of the lease would not be adequate." Also, "If you have a valid complaint it

will be fully taken care of at this time, just as it has always been taken care of in the past. Never once during the term of this lease has there been a single question raised concerning inadequate heat or air conditioning. It is true that you have complained several times about the floor covering, and it has been pointed out to you, and we have agreed to bring in a building inspector as originally suggested by you, to unquestionably prove the fact that the floor covering is simply being worn out by hard usage and should be replaced by you, the tenant."

Initially, we find no merit in defendant's contention that there was a complete failure of proof because the lease was not introduced into evidence, and the amount alleged to be due thereon was not proved.

The record shows a copy of the lease and its riders was attached to the complaint. In the complaint it was alleged that the lease was executed by the defendant, and that the rent accruing on the lease for the months of December 1964 and January 1965, amounting to $1,620, was due and unpaid. Defendant, in its motion and affidavit to vacate the judgment, did not deny the lease or the accrued rent and used provisions of the lease as the basis for an affirmative defense.

██ No offer or proof of the lease or accrued rent was necessary. Section 36 of the Civil Practice Act provides that when a written instrument on which a claim or defense is founded is attached to a pleading as an exhibit, "the exhibit constitutes a part of the pleadings for all purposes. No profert is necessary." Also, in Peters v. Peters, 376 Ill 237, 33 NE2d 425 (1941), it is said (p 240):

> "It is unnecessary to introduce evidence to prove facts admitted by the pleadings. . . . In this case, the complaint having alleged in general terms the contents of the will, and so described it as to afford positive identification, alleged its probate, and at-

tached a copy thereof to the complaint, all of which allegations were admitted by the answer, it was not necessary to make proof of the instrument by offering it in evidence."

Considered next is defendant's contention that the trial court "erred in admitting settlement correspondence, and in considering the motives of defendant in terminating the tenancy." This contention refers to exhibits 3, 4 and 6, which were admitted over defendant's objection. Authorities cited in support include Hill v. Hiles, 309 Ill App 321, 32 NE2d 933 (1941), where it is said (p 331):

"The Illinois courts have consistently refused to permit evidence of mere offers and negotiations for settlement to reach the jury on the ground that public policy favors the settlement of claims outside of court."

Plaintiff argues that exhibits 1 through 6, read as a series, compellingly illustrate that the condition of the premises was not the motivating factor in the defendant's decision to abandon them.

█ We agree with the basic premise that evidence of offers and negotiations for settlement are ordinarily inadmissible. Nevertheless, we believe these exhibits come within the rule set forth in Nelson v. Union Wire Rope Co., 31 Ill2d 69, 199 NE2d 769 (1964), where the court said (p 115):

"As a general rule any statement, written or not, made by a party or in his behalf which is inconsistent with his present position may be introduced in evidence against him."

These letters, as a series, were relevant to the subject matter of the suit and, although they discussed settlement of the unexpired portion of the lease, they contained state-

ments of defendant which were inconsistent with its claim of constructive eviction. We find no error here.

Finally, we consider defendant's basic and determinative contention that "the plaintiff was guilty of the first breach of the contract of lease, and cannot, therefore, enforce the provisions of the contract which he first breached."

 In support of its contention that plaintiff cannot "enforce the provisions of the contract which he first breached," defendant cites Rice v. Fidelity & Deposit Co., 103 F 427 (1900), in which the court said (p 433):

> "He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure to perform."

Also, Norrington v. Wright, 115 US 188 (1885), is cited to show that "a party in breach of the first portion of a divisible contract could not enforce performance of the portions of the contract as to which there had been no breach, even if the first breaching party performed properly after the first breach."

Defendant argues, "Although these cases are not lease cases, they do involve bilateral contracts, and 'an ordinary lease is a partly bilateral contract.' Williston, Contracts, 3rd Ed, Section 890, p 580."

Defendant also cites a number of "lease cases" to show that "the modern cases have construed the doctrine of 'constructive eviction' so that it amounts to an application of the ordinary contract rule that a party cannot have the right both to breach and to enforce at the same time. This landlord did not comply with the terms of his complex printed lease with its complex riders, and should not have been permitted to enforce, selectively, one of the promises of the lease without fulfilling the other promises

of the same lease. The evidence is not in any substantial conflict on the two basic breaches of the lease by the landlord, and the result could only have come from an erroneous view of the law on the part of the trial magistrate."

 As we view this record, a discussion of defendant's authorities on the effect of the first breach in a contract is unnecessary. The Illinois decisions involving "constructive eviction" adequately encompass the effect of a first breach and its waiver. The "constructive eviction" guidelines set forth in Automobile Supply Co. v. Scene-in-Action Corp., 340 Ill 196, 172 NE 35 (1930), apply here. There it is said (p 201):

> ". . . any act of the landlord which renders the lease unavailing to the tenant or deprives him of the beneficial enjoyment of the premises constitues a constructive eviction of the tenant, which exonerates him from the terms and conditions of the lease and he may abandon it. . . .

> "Not every act of a landlord in violation of his covenants or of the tenant's enjoyment of the premises under the lease will amount to a constructive eviction. . . . To constitute an eviction there must be something of a grave and permanent character done by the landlord clearly indicating the intention of the landlord to deprive the tenant of the longer beneficial enjoyment of the premises in accordance with the terms of the lease. . . . The failure of a landlord to furnish heat for the demised premises in accordance with the terms of his covenant in the lease justifies the tenant in removing from the premises, and if he does so he is discharged from the payment of rent thereafter. . . . Whether the acts of the landlord amount to a constructive eviction is

ordinarily a question of fact for the decision of a jury, depending upon the circumstances of the particular case."

Also, in Gibbons v. Hoefeld, 299 Ill 455, 132 NE 425 (1921), it is said (p 464):

"We do not understand the law to be that an omission of duty by the landlord which has the effect of depriving the tenant of the enjoyment of the demised premises must be shown to have been with the intent that such should be the effect of the omission. Whether the landlord intended that result could not, it seems, in reason be a determining factor if he willfully refused to fulfill his promise or so negligently performed it that what he did was of no benefit in protecting plaintiff in error in the enjoyment of the demised premises."

 The issue of whether plaintiff breached the lease by installing a defective floor and an inadequate ventilating system was a question of fact for the decision of the trial court and depended largely upon contradictory evidence. This court is bound by the rule that where the trial court has seen and heard the witnesses and the testimony is contradictory, the reviewing court will not substitute its judgment as to the credibility of witnesses for that of the trial court and will not disturb the findings unless they are manifestly against the weight of the evidence. (Ezydorski v. Krozka, 31 Ill App2d 79, 175 NE2d 668 (1961).) In order for a decision of the trial court to be contrary to the manifest weight of the evidence, where the evidence is conflicting, an opposite conclusion must be clearly apparent. Olin Industries, Inc. v. Wuellner, 1 Ill App2d 267, 271, 117 NE2d 565 (1954).

After examining the evidence offered by both sides, we believe the agreement of the plaintiff to install the

asphalt floor and ventilating system carried with it the obligation to make such installations in a manner reasonably suited for defendant's purposes—the maintenance of an insurance office. Conceivably, the failure to install and maintain a floor, which deprived defendant of the beneficial enjoyment of the premises, could be considered "something of a grave and permanent character." However, if defendant's use of the floor was unreasonable and materially caused its deterioration, it could not be fairly found that plaintiff substantially breached the lease in that respect.

Defendant's evidence that the air conditioning system was inadequate does not appear to be conclusive. Also, the lease provided that the "maintenance and repairs to this system will be borne by the Lessee."

We conclude that on the record before us, an opposite conclusion to that of the trial court is not clearly evident; therefore, the judgment should be affirmed.

For the reasons given, the instant judgment and the judgments in Appeals Nos. 52,061 and 52,062 are affirmed.

Affirmed.

BURMAN and ADESKO, JJ., concur.