RICHARD BROUSSARD *et al.*, Plaintiffs-Appellees, v. HOUDAILLE INDUSTRIES, INC., *et al.*, Defendants-Appellants.

First District (5th Division)   No. 1—87—1837

Opinion filed May 19, 1989.

Sidney Sherman and Jeffrey Dean Lewis, both of Chicago, for appellant Surty Manufacturing Co.

Doyle & Ryan, Ltd., of Chicago (Thomas J. Fedick, of counsel), for appellees.

JUSTICE COCCIA delivered the opinion of the court:

This is an appeal from plaintiffs' verdict in a products liability case, tried upon a strict liability theory, returned against Surty Manufacturing Co., manufacturer of a gate guard safety system. The jury returned a verdict in favor of Richard Broussard for injuries which he received while operating a press brake machine without the use of any safety device, and in favor of his wife for loss of her husband's services.

The press brake was a multifunctional industrial machine, manufactured by the codefendant, Houdaille Industries, whom the jury found not responsible to Broussard. The press brake was equipped with a palm button safety device manufactured by others and with the Surty gate guard safety system, manufactured and installed by the Surty Manufacturing Co., appellant.

Surty asks this court to reverse the verdict and judgment entered below and assigns several errors in support thereof. As it is our opinion that this case must be reversed on the issue of proximate cause, we need not undertake a review of the additional alleged errors.

The evidence in this case brought out the following facts. In 1976, the Rock-Ola Company, Broussard's employer, purchased a gate guard system from Surty. Surty manufactured the unit and installed it upon the press brake machine in October 1976. Broussard was injured in November 1977. The press brake was a multifunctional industrial machine used by Rock-Ola to form metal pieces. The gate guard was a plastic unit, intended to protect the operator's hands when the press was activated. It is at the point of operation that a piece is formed through the operation of the force delivered by a descending ram.

Henry Will, Rock-Ola's setup man, testified that it was his responsibility to employ judgment and discretion in choosing the mode and procedure to be employed by a given press operator, including which safety device, if any, was to be employed on a given job. The size and compatibility of the piece being formed were factors that entered into his consideration.

On the day of the accident, Will had decided that Broussard would operate the press through the use of the foot pedals and would not utilize any safety device in the operation, due to the size of the unit being formed. The piece being worked on by Broussard at the time of the occurrence was about two to three feet long and from 6 to 10 inches wide, resulting in approximately six inches of the piece protruding, which required that it be held by the operator until the second hit of the ram.

Will had at least two safety devices to choose from to protect the operator during the forming process. One of the safety devices was the palm buttons, which required the operator to place both hands on the buttons to operate the press, thereby keeping his hands away from the point of operation. The other safety device was the Surty gate guard system which, when activated, had the same purpose as the palm buttons, namely, to keep the operator's hands away from the point of operation.

The palm buttons were available when the use of the safety gate was inappropriate. If the gate guard was the safety device of choice at a particular moment, then the palm buttons would not be engaged; conversely, if the palm buttons were being engaged, the gate would not be used.

The gate guard safety system, on the judgment of the setup man, could be taken out of service completely for any reason, including the possible need to form larger or irregular pieces. In taking the gate out of service for this or any other purpose, the gate guard could not then be employed as a safety device. The gate guard was in working order, but simply not being used at the time of Broussard's injuries.

Because the gate guard had hinges, it could be taken out of service by being swung up and away from the point of operation. The press brake could be run without the gate guard. With the gate guard inactivated, the operator would be required under such circumstances to either employ the palm button safety device, or to proceed without any safety device. Broussard's employer, through its setup man Will, at the moment of concern in this case consciously and purposefully chose to operate the press brake without utilizing the Surty gate guard or the palm buttons, or any other safety device. To be sure, when Will opted to use the foot pedal mode of operation, the operator could not use the palm buttons. Will claimed that he did not choose the Surty gate guard because he did not know how to use it.

Kenneth Barron, Jr., was Surty's vice-president at the time of the accident. He testified that Rock-Ola's employees were verbally in-

structed about the use and adjustment of the gate guard system around the time of installation and during some 15 separate visits he made to the plant thereafter for this purpose. All of this instruction took place prior to the accident in question. In particular, Barron met with Rock-Ola's maintenance foreman in September 1976. And in February 1977, he met with Rock-Ola's production foreman, safety director, maintenance foreman, and plant production manager concerning the proper use of the gate guard. Prior to the accident he met individually with the setup man and foreman regarding the use and operation of the gate guard safety device. Barron recalled specifically speaking with Henry Will, the setup man, and showing him how to adjust the gate guard. Barron instructed Will on more than one occasion and was accessible to Will during all of his visits to Rock-Ola. On five or six occasions prior to the accident, Barron helped Rock-Ola employees determine if they could change or improve procedures involving the guard. After instructing Rock-Ola's personnel, Barron had no indication that anyone in charge did not know how to adjust the guard.

Will did not recall meeting Barron, and he testified that prior to the accident he did not know how to adjust the gate guard. He further testified that a written instruction manual, received after the accident, explained the proper adjustment of the guard. Will, over the period of one year from the date of the installation of the Surty gate guard up until the time of the accident, never called Surty to inquire about the operation of the gate guard. It is equally curious that Will, over the same period of time, never asked the Rock-Ola maintenance department, whose duty it was to maintain the equipment in operable condition, for direction. Will claimed that the gate guard was never used before the accident. However, Ronald E. Griffin, Rock-Ola's safety engineer, testified to the contrary.

Will further testified that the palm button operation was not compatible with the piece being formed by Broussard at the time he was injured. Yet on cross-examination Will admitted that the palm buttons possibly could have been used, but that their use would have slowed production. One begins to better understand the surrounding circumstances in this matter upon reading testimony which points out that the setup man (Will), the operator (Broussard), and Rock-Ola were interested in production and that Broussard operated the press brake under a quota-bonus incentive program.

The evidence deposition of Ronald E. Griffin, Rock-Ola's safety engineer at the time of the accident, was read into the record at trial on behalf of the plaintiffs. Griffin testified that Rock-Ola requested an

instruction manual from Surty before the accident, but one was not received until after the accident. Notwithstanding this fact, and most interestingly, Griffin testified that he was present when Will, the Rock-Ola setup man, received verbal instructions regarding the proper use of the gate guard system from Barron. Equally significant was Griffin's concession that the gate guard system had indeed been used on the press brake before the accident and that the guard had no mechanical or electrical problems. Will did not specifically complain to Griffin that the reason the gate guard was not being used at the time of the accident was because they had not received a manual. Griffin's testimony was conflicting as to why the gate guard was not being used during the run when Broussard was injured. At one point, Griffin said that the setup man, of his own volition, chose not to use the gate guard on that job, yet at another point he said that the setup man did not know how to use the gate guard.

■ We start our analysis by turning first to the question of whether the evidence in this case was sufficient to support the jury's verdict on the theory of strict liability in tort. As so often has been restated by Illinois appellate courts since *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182:

"Under the doctrine of strict liability the essential elements which the plaintiff must allege and prove in order to establish a *prima facie* case are: first, that the injury or death in question was *proximately* caused by a condition of the product; secondly, that the condition was an unreasonably dangerous one; and lastly, that the condition existed at the time the product left the defendant's control. [Citation.]" (Emphasis added.) *Belleville National Savings Bank v. General Motors Corp.* (1974), 20 Ill. App. 3d 707, 708, 313 N.E.2d 631, 632.

It is plaintiffs' contention, allegedly established by their witnesses and admitted by their counsel at oral argument, that Surty, by the sole act of failing to provide an instruction manual to Rock-Ola, rendered its gate guard system defective, which defect proximately caused the injuries in question. However, plaintiffs offer us no authority in support of this extraordinary theory of liability.

■ We point out that this court has previously declined to consider an argument raised by a plaintiff without supporting authority. See *Nicholl v. Scaletta* (1982), 104 Ill. App. 3d 642, 647, 432 N.E.2d 1267, 1272.

Plaintiffs contend, however, that Will's testimony supports their theory of liability in that he testified that if he had known how to adjust the gate guard, it could have been used on the run which resulted

in Broussard's injuries. That is a questionable assertion, particularly in light of Will's testimony on cross-examination:

"Q. [MR. LEWIS]: Okay. This one is 6 to 10 inches wide. Now isn't it a fact because of the width of that piece and the way it was being used inside of the machine that the gate guard wouldn't work with this particular piece?

A. [MR. WILL]: Could you repeat that?

Q. Yes. Because of the width of that piece, isn't it true that the gate guard wouldn't work with that piece?

A. It would have been a problem, yes."

■■ The fact is that at the time of the injury in question Rock-Ola, through its setup man Will, had made a conscious and deliberate decision that the gate guard would not be used in the particular operation which was being conducted by Broussard. Based on the direct testimony of Will, we are asked to assume that, had a manual indeed been in Rock-Ola's possession prior to the accident, a different result would have obtained. To make such an assumption, as well as the assumption that the absence of the manual was the proximate cause of this accident, is an exercise in gross speculation and conjecture which cannot be permitted. There is simply no evidence to support such a conclusion. One can easily compare this case directly with those cases dealing with the presence, or the adequacy, of warnings. In the warning cases, it has been held that there must be sufficient evidence supporting a reasonable inference, rather than a guess, that the presence of adequate warnings would have prevented the plaintiff's injuries. See *Staymates v. ITT Holub Industries* (1987), 364 Pa. Super. 37, 527 A.2d 140; *Overpeck v. Chicago Pneumatic Tool Co.* (E.D. Pa. 1986), 634 F. Supp. 638, *aff'd* (3d Cir. 1987), 823 F.2d 751.

There is no evidence that either Will or Broussard would have acted any differently if they had had the manual. The fact that no manual was supplied by Surty until after the accident does not constitute evidence that the manual would have either been used by Will, or Broussard, or that the injury would have been avoided. Without evidence that the manual would have prevented the harm, to permit the jury to draw such an inference allows it impermissibly to base its verdict on mere speculation. If one were allowed to deal in assumptions, one could equally assume that the size of the piece being worked upon made it impossible to use the gate guard. But this court cannot deal in guess work.

■ Liability cannot be predicated upon surmise or conjecture as to the cause of a plaintiff's injuries. Instead, proximate cause can only be established where there is a reasonable certainty that the defend-

ant's acts caused the injuries. *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 85, 508 N.E.2d 1201, 1207.

In support of our conclusion we are drawn to the case of *Buzzell v. Bliss* (Minn. App. 1984), 358 N.W.2d 695. The plaintiff in *Buzzell* sustained injuries to her fingers while operating a punch press. While working at her station she removed her safety devices, known as wristlet pullbacks, and proceeded to do her work without their aid. Somehow she allowed her hands into the point of operation and sustained serious injury.

The manufacturer of the wristlets was named as a defendant. The trial court, in awarding defendant a summary judgment, held that as a consequence of the plaintiff not wearing the wristlets at the time she sustained her injury, any defect in the wristlets could not have proximately caused her accident. The appellate court affirmed, holding that the defective condition of the product must be shown to be the proximate cause of the injury. The court went on to point out that since plaintiff was not wearing the wristlet pullback device at the time of her accident, she could not establish a claim against its manufacturer.

We concur with the *Buzzell* court's analysis and conclusions. Like that court, we have not found any case in our review of this issue that involves safety equipment which was available, but not in fact in use at the time of an accident, and that would support plaintiffs' theory of proximate cause.

■ We are aware that proximate cause is ordinarily a question of fact, but it becomes a question of law when there can be no difference in the inference to be drawn by reasonable men. *Gilbertson v. Rolscreen Co.* (1986), 150 Ill. App. 3d 192, 197, 501 N.E.2d 954, 957.

Plaintiffs agree that this is not a case involving a manufacturing or design defect, as admitted by their counsel during oral argument; nor is this a case where a safety device failed while being used; and this is not a case where a manufacturer gave incorrect instructions which were followed by the user, causing his injuries. Rather, in this case Rock-Ola made a conscious and deliberate decision, through its employee Will, not to use an operable safety device and then sent Broussard to complete his tasks without any protection.

■ Judgments notwithstanding the verdict should be entered only in those cases where all of the evidence, when viewed most favorably to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

We have reviewed all the evidence in light of the *Suvada* and *Pedrick* doctrines. We are of the opinion that all of the evidence admitted in this case, taken in its aspect most favorable to the plaintiffs, and taken together with all of the reasonable inferences that can be drawn therefrom, so overwhelmingly favors Surty that no contrary verdict could ever stand.

■ We find no causal relationship between the conduct of Surty in not providing a written instruction manual and the injuries sustained by Broussard. It is our view that the plaintiffs did not introduce any credible evidence from which it might be reasonably inferred that the condition of the product proximately caused Broussard's injuries. See *Pedrick*, 37 Ill. 2d 494, 229 N.E.2d 504; *Hepler v. Ford Motor Co.* (1975), 27 Ill. App. 3d 508, 327 N.E.2d 101; *Belleville National Savings Bank*, 20 Ill. App. 3d 707, 313 N.E.2d 631.

For the reasons set forth above, we reverse the judgment entered below and remand this case to the circuit court of Cook County to enter judgment for the appellant Surty Manufacturing Co.

Reversed and remanded.

MURRAY, P.J., and PINCHAM, J., concur.