LOUISE SKONBERG, Adm'r of the Estate of John T. Skonberg, Plaintiff-Appellee, v. OWENS-CORNING FIBERGLAS CORPORATION, Defendant-Appellant.

First District (5th Division) No. 1—89—1315

Opinion filed May 3, 1991.—Rehearing denied August 5, 1991.

738

Kelley, Drye & Warren, of Chicago (John Dames, Eric F. Quandt, Peter E. Carlson, and Carolyn Quinn, of counsel), for appellant.

Burke & Burke, Ltd., of Chicago (John M. Burke, Molly C. Mason, and Thomas M. Lake, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiff Louise Skonberg, as administrator of the estate of her husband, John Skonberg (decedent), filed a wrongful death and survival action against defendant Owens-Corning Fiberglas Corporation (OCF) and several other manufacturers and distributors for injuries allegedly sustained by decedent as a result of exposure to asbestos-containing products manufactured, sold or distributed by defendants. Plaintiff sought compensatory damages, asserting a theory of strict liability in tort against OCF. A jury verdict was entered in plaintiff's favor and plaintiff was awarded a final judgment amount of $225,000.

On appeal, OCF contends that the circuit court improperly denied both its motion for judgment notwithstanding the verdict and also its motion for a new trial.

According to evidence adduced at trial, decedent was exposed to asbestos products during his employment as an insulator from approximately 1946 to 1977. Decedent was exposed to the asbestos products of OCF between 1960-1964. Mr. Skonberg's death resulted from asbestosis and cancer of the lung. Decedent smoked one package of cigarettes per day from at least 1941 until November of 1977. Mrs. Skonberg admitted that although she and decedent knew of the warnings on cigarette packages, they "paid no heed" to them and continued smoking until decedent became ill. Plaintiff also testified that de-

cedent received the Asbestos Workers magazine and read it on a regular basis in the 1960's. Additionally, in the late 1960's plaintiff discussed with decedent information he received from his union concerning the health hazards of asbestos but never discussed the fact that it could cause cancer.

One of plaintiff's medical experts, Dr. Kittle, testified at trial that there is "a very definite relationship between asbestos and lung cancer." Dr. Kittle also testified that individuals who are exposed to cigarette smoke as well as asbestos have between a 40 to a 90 times greater likelihood of developing lung cancer than those who did not come into contact with asbestos. Dr. Kittle also admitted that if an asbestos worker did not smoke, he would not get lung cancer.

Plaintiff's other medical expert, Dr. Cugell, testified that smokers who are exposed to asbestos "have from 50 to 90 times the risk of developing cancer of the lung compared with people with neither of those hazards." In Dr. Cugell's opinion, the decedent suffered from asbestosis which was caused in part by his exposure to OCF asbestos products. He based his opinion on the "well-established and acknowledged synergistic effect between smoking and asbestos exposure and the occurrence of lung cancer." On cross-examination, Dr. Cugell testified that cigarette smoking, combined with decedent's pre-1960 asbestos exposure, could have caused decedent's cancer.

OCF moved for a directed verdict at the end of plaintiff's case in chief, insisting that plaintiff failed to introduce any evidence proving that OCF had a duty to warn decedent or that the lack of warning on its products was the proximate cause of his injuries. The court denied OCF's motion.

The court ruled in OCF's case in chief that eight issues of a union publication called Asbestos Worker, discussing the health hazards of asbestos, were admissible, but only for the purpose of impeaching the testimony of Dr. Castleman, plaintiff's state-of-the-art expert. The court denied OCF's request that the magazines be admitted as substantive evidence and denied admission of plaintiff's discovery deposition as substantive evidence.

In addition, OCF's proposed jury instructions on assumption of risk and proximate cause were denied, as well as its instructions on comparable fault and the definition of "unreasonably dangerous." The jury returned a verdict for plaintiff in the amount of $283,000.

OCF moved unsuccessfully for judgment notwithstanding the verdict or, in the alternative, for a new trial. OCF's motion for setoff was, however, granted. The final judgment amount was $225,000, plus costs and expenses of $1,923.21.

OCF first contends that the circuit court erred in denying its motion for judgment notwithstanding the verdict since plaintiff, by neglecting to present evidence that decedent would have adhered to warnings if provided, failed to prove that asbestos proximately caused decedent's injuries.

It is well established that a judgment notwithstanding the verdict can only be granted where all the evidence, when viewed in a light most favorable to the nonmoving party, so overwhelmingly favors the moving party that no contrary verdict could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

To recover under a strict liability theory, a plaintiff must establish that the injury proximately resulted from an unreasonably dangerous condition of the product which existed at the time it left the manufacturer's control. (*Soto v. E.W. Bliss Division of Gulf & Western Manufacturing Co.* (1983), 116 Ill. App. 3d 880, 452 N.E.2d 572.) Plaintiff alleges that OCF's products were unreasonably dangerous because OCF failed to warn of dangers associated with their use. The failure to warn of a product's dangerous propensities may serve as a basis for holding the manufacturer strictly liable in tort. (*Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 454 N.E.2d 210.) Moreover, as the supreme court noted in *Hammond*, a jury may properly conclude that asbestos is an unreasonably dangerous product, and accordingly, a manufacturer of asbestos products may be held strictly liable for failing to provide adequate warnings to consumers of its asbestos products. (*Hammond*, 97 Ill. 2d at 206.) OCF maintains that the question presented in this appeal, which was not discussed in *Hammond*, is whether the plaintiff may succeed on the strict liability claim although she failed to prove that had an appropriate warning label been placed on OCF's asbestos products, decedent would have altered his conduct.

OCF maintains that its asbestos product was not the proximate cause of decedent's injuries because decedent had a practice of ignoring the warning labels on cigarette packages and decedent had knowledge and appreciation of the dangers of asbestos. In support of its contention, OCF relies on *Brossard v. Houdaille Industries, Inc.* (1989), 183 Ill. App. 3d 739, 539 N.E.2d 360, in which the plaintiff sued the manufacturer of a "gate guard safety system" alleging that the manufacturer's failure to furnish instructions for the system rendered the product defective. The court noted:

"Liability cannot be predicated upon surmise or conjecture as to the cause of a plaintiff's injuries. Instead, proximate cause

can only be established where there is a reasonable certainty that the defendant's acts caused the injuries." (183 Ill. App. 3d at 744.) Consequently, the court found that there was no evidence to support plaintiff's argument that, had defendant supplied an instruction manual, either plaintiff or his employer would have acted differently or that plaintiff's injury would have been avoided. The court concluded that the lack of warning was not the proximate cause of plaintiff's injuries since the evidence showed that plaintiff's employer consciously and purposefully chose to operate the press brake without utilizing other safety devices. *Brossard*, 183 Ill. App. 3d at 744.

In *Mason v. Caterpillar Tractor Co.* (1985), 139 Ill. App. 3d 511, 487 N.E.2d 1043, also relied upon by OCF, the plaintiff filed a products liability action against Caterpillar Tractor Company, claiming that decedent was killed when, while using a sledgehammer to repair a Caterpillar tractor, a piece of metal came loose from the tractor's steel track shoe and struck him in the chest. The court found that, as a matter of law, the defendant had no duty to warn plaintiff since there was no causal connection between the alleged lack of warning and decedent's chest wound. Because the alleged danger was open and obvious and generally appreciated, the court held that nothing would be gained by a warning and, as such, none was required under the circumstances. Decedent fully appreciated the danger in the activity which ultimately caused his death and, in fact, it was the general practice of decedent's employer to avoid the activity which led to decedent's death. As such, the court stated that any warning to avoid this dangerous activity would have been superfluous. *Mason*, 139 Ill. App. 3d at 519.

■ In the instant case, there is no overwhelming evidence that decedent consciously and purposefully chose to be exposed to the health hazards of asbestos or that the risk of asbestos was open and obvious. Rather, this case is more similar to *Raney v. Owens-Illinois, Inc.* (2d Cir. 1990), 897 F.2d 94, a case involving the death of an asbestos worker, which addressed the issue of whether there was sufficient evidence for the jury to conclude that the absence of warnings concerning the hazards of asbestos was the proximate cause of the decedent's injuries. The defendant in *Raney* contended that plaintiff failed to present any evidence from which a jury could have reasonably concluded that plaintiff would have heeded warnings and altered his conduct so as to avoid exposure to asbestos and that the only evidence on the issue of heeded warnings was the evidence that plaintiff continued smoking despite the appearance of warnings of the health

hazards of smoking. In rejecting defendant's argument, the court stated:

> "Evidence that [decedent], who had begun smoking and perhaps had become addicted [to smoking] years before cigarette health warnings appeared, did not stop smoking after such warning *** is, at most, a circumstance for the trier [of fact] to consider in deciding whether an asbestos warning would have been heeded. Such evidence does not preclude a finding in plaintiff's favor. *** [A] jury could reasonably conclude that [plaintiff] would have adjusted his conduct more significantly to asbestos warnings than to cigarette warnings or that his union would have precipitated action to protect his welfare." *Raney*, 897 F.2d at 96.

The decision in *Raney* is soundly reasoned, since to hold otherwise would preclude any individual who smoked cigarettes and worked with asbestos products from recovery for injuries resulting from exposure to asbestos products on a failure to warn theory. It should be noted that the present case does present a slightly different situation than that presented in *Raney*. In *Raney*, the defendant alleged that its asbestos products were not the proximate cause of decedent's injuries merely because the decedent smoked cigarettes. In the instant case, OCF contends that its asbestos products were not the proximate cause of decedent's injuries because decedent smoked cigarettes *and* because decedent received information regarding the dangers of asbestos from the union publication Asbestos Worker. In addition, Mrs. Skonberg testified that she had discussed with her husband the harmful effects of asbestos. Significantly, however, there was never any discussion between plaintiff and the decedent about the link between asbestos and cancer. Furthermore, there was never any testimony from the decedent and no indication as to how he would have reacted had there been appropriate warnings placed on the asbestos products manufactured and produced by OCF.

Moreover, the evidence established that decedent was exposed to asbestos products manufactured by OCF from the period of 1960 to 1964. Furthermore, it is undisputed that OCF became aware of the dangers associated with asbestos as early as 1940. Also, there is no dispute that despite OCF's knowledge of the dangers associated with asbestos, it failed during the relevant period to place upon its asbestos products any warning labels which would have informed the decedent of the hazard he faced.

Accordingly, applying the *Pedrick* standard, we find that the trial court correctly denied defendant's motion for judgment notwithstand-

ing the verdict. Viewing the evidence in the light most favorable to plaintiff, the evidence does not so overwhelmingly favor defendant that no contrary verdict could stand.

Defendant next contends that if its motion for judgment notwithstanding the verdict is denied, it is entitled to a new trial. Defendant sets forth the following arguments in support of its contention that it was denied a new trial.

■ OCF requested plaintiff to produce the "proof of claim" (POC) form filed by plaintiff with the Johns-Manville Personal Injury Trust (Manville) a successor to the Johns-Manville Corporation, delineating decedent's exposure to asbestos containing products manufactured by Johns-Manville Corporation. Plaintiff's attorney refused to produce the POC form, contending that it is protected by the attorney-client privilege, the work-product doctrine and by the privilege accorded documents generated during the course of settlement negotiations.

Initially, it should be noted that plaintiff failed to respond to OCF's argument that no attorney-client privilege adhered to the POC form. Plaintiff has therefore waived this argument.

■ Plaintiff also first maintains that evidence, in order to be discoverable, must be relevant and that the trial court properly ruled that the POC form is irrelevant and therefore inadmissible. The right to discovery is limited to disclosure regarding matters relevant to the subject matter involved in the pending action. (*United Nuclear Corp. v. Energy Conversion Devices, Inc.* (1982), 110 Ill. App. 3d 88, 441 N.E.2d 1163.) However, great latitude is allowed in the scope of discovery, and discovery thus includes not only what is admissible at trial, but also that which may lead to the discovery of admissible evidence. *Bass v. Cincinnati, Inc.* (1989), 180 Ill. App. 3d 1076, 536 N.E.2d 831.

■ Plaintiff contends that this court has already determined that evidence of exposure to other asbestos products is irrelevant. In *Lipke v. Celotex Corp.* (1987), 153 Ill. App. 3d 498, 501, 505 N.E.2d 1213, the court held:

"[T]he fact that plaintiff used a variety of asbestos products does not relieve defendant of liability for his injuries. Evidence of his exposure is not relevant."

Plaintiff contends that *Lipke* stands for the proposition that a plaintiff's exposure to other asbestos products is irrelevant and as such is not *discoverable*. What the case actually espouses is that evidence of a plaintiff's exposure to other asbestos products is irrelevant and there-

fore *inadmissible. Lipke* does not discuss the discoverability of a form containing evidence of other exposures.

■ The trial court in the instant case also confused admissibility and discoverability. After an *in camera* review of the POC form, the trial court stated:

"I can't see a great deal of value to you, unless it were to be admissible; and even then I don't think it's what I would classify as terrific.

I mean, it wouldn't be bad, and I'm sure it would be of some help, but it's not, again, under any great shape, [*sic*] if it were admissible, and I'm convinced it's not admissible."

Thus, the trial court denied the discoverability of the POC form on the basis that the form was inadmissible. Although the trial court admitted that the POC form may be of "some help," it still withheld the entire form from discovery. This ruling was therefore incorrect.

■■ Plaintiff next maintains that the POC form is inadmissible since it was generated during the course of settlement negotiations with Manville. Evidence of offers of settlement or compromise are ordinarily inadmissible (*Niehuss v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1986), 143 Ill. App. 3d 444, 492 N.E.2d 1356), but admissions of fact are not excluded simply because they are made in the course of negotiations. (*Khatib v. McDonald* (1980), 87 Ill. App. 3d 1087, 410 N.E.2d 266.) An oral or written statement " 'made by a party or in his behalf which is inconsistent with his present position may be introduced in evidence against him.' " (*Lipschultz v. So-Jess Management Corp.* (1967), 89 Ill. App. 2d 192, 200, 232 N.E.2d 485, quoting *Nelson v. Union Wire Rope Co.* (1964), 31 Ill. 2d 69, 115, 199 N.E.2d 769.) Furthermore, admissions of other facts elicited incidentally during settlement discussions may be introduced as evidence. *In re Marriage of Passiales* (1986), 144 Ill. App. 3d 629, 429 N.E.2d 541.

■ Plaintiff maintains that while an exception to the general rule of admissibility exists when the offer of settlement contains independent and relevant admissions of fact, such admissions have to be adverse to the interest that plaintiff presently asserts. Thus plaintiff maintains that the facts contained in the POC form are neither disputed nor adverse to OCF's interest and therefore cannot be admissible. While plaintiff may be correct in concluding that the form is inadmissible, plaintiff does not address whether the POC form is discoverable. Therefore, OCF should have been given the opportunity to discover whether the POC form did indeed contain facts either disputed or adverse to OCF's interest or incidental to the settlement discussions.

■■ Plaintiff next contends that the work-product doctrine bars the POC form from discovery. Supreme Court Rule 201(b)(2) (107 Ill. 2d R. 201(b)(2)) provides that material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose theories, mental impressions, or litigation plans of the party's attorney. The purpose of this exemption is to prevent complete invasion of files of counsel, and it is clear it would protect notes and memoranda actually prepared by counsel for use in trial. (*Kilpatrick v. First Church of the Nazarene* (1989), 182 Ill. App. 3d 461, 538 N.E.2d 136.) When the disputed material merely reports objective facts or data, untainted by counsel's mental impressions, theories or trial strategy, the doctrine does not apply. See *Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 111, 432 N.E.2d 250 (metallurgical report containing objective information consisting of mathematical computations, formulae, tables, drawings, photographs, industry specifications, data and handwritten notes was not attorney's work product).

■■ In the instant case, the POC form contains objective facts concerning decedent's work history and exposure to asbestos products. (See *People v. Treece* (1987), 159 Ill. App. 3d 397, 413, 511 N.E.2d 1361 (attorney's handwritten notes which only contained information related to mileage, speed and time were "[f]ar from reflecting the mental processes of the attorney in preparation of defendant's case, [since] the notes are largely recordation of a witness' statements to counsel pertaining to 'time tests' being taken").) The POC form does not contain counsel's mental processes, impressions or strategies for trial, and therefore, the document falls outside the ambit of the work product rule.

■■ Although the trial court erred in denying discovery of the POC form, the information contained in the form would have given OCF no more information than it had already received. There is no indication that had OCF been given access to the POC form, this information would have changed the outcome of the trial below. The POC form merely states the fact that decedent was exposed to asbestos products other than those manufactured by OCF and the years in which he was exposed to such products. Plaintiff has already conceded the fact that decedent was exposed to asbestos products other than those manufactured by OCF. Where it appears that an error did not affect the outcome of the trial below, the judgment will not be disturbed. (*J.L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, 483 N.E.2d 273.) Thus any error made in the lower court with respect to the eviden-

tiary ruling on the POC form would merely constitute harmless error, as the information contained in the POC form was already within the knowledge of the defendant's counsel.

 OCF further contends that the circuit court erred when it refused to tender to the jury OCF's proposed instructions concerning assumption of risk. Assumption of the risk is an affirmative defense that operates to reduce plaintiff's recovery by that amount which the jury finds him to have been at fault. (*Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197.) A plaintiff's unobservant, unattentive, ignorant or awkward failure to either discover or guard against a defect cannot be considered a damage-reducing factor. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 395.) The assumption of risk test is subjective in the sense that evidence of plaintiff's knowledge, understanding and appreciation of the danger must be assessed, rather than that of a reasonably prudent person. (*King v. American Food Equipment Co.* (1987), 160 Ill. App. 3d 898, 513 N.E.2d 958.) However, the trier of fact is not compelled by the subjective nature of this test to accept a plaintiff's testimony that he was unaware of the danger, if, in light of all the evidence, he could not have been unaware of the hazard. The factors of the user's age, experience, knowledge and understanding, as well as the obviousness of the defect and the dangers it poses, are relevant to the trier of fact's determination of the issues. *Williams*, 45 Ill. 2d at 430.

Applying these principles, the trial court determined that in the instant case OCF's evidence "comes very close to the threshold" but "that the evidence of [decedent's] conduct at the time would [not] show anything more than being *** unobservant, inattentive, ignorant or awkward to guard against." OCF contends that the trial court erred in refusing to tender an assumption of the risk instruction since the evidence shows that decedent assumed the risk of exposure to its asbestos products by continuing to be exposed to the products even after reading the Asbestos Worker magazine, pointing out to his wife specific articles in the magazines addressing the health hazards associated with asbestos, and receiving information from his union regarding the health hazards of asbestos exposure.

 Although to present an assumption of the risk issue to the jury defendant need only show some evidence that plaintiff assumed the risk (*Erickson v. Muskin Corp.* (1989), 180 Ill. App. 3d 117, 535 N.E.2d 475), OCF has failed to satisfy this burden. There are two flaws in OCF's argument. First, there is simply no indication that decedent had knowledge of the dangers of asbestos exposure during the relevant time period, the early 1960's. Rather, there is testimony that

decedent received information from the Asbestos Worker magazine and from his union in either "the 1960's" or in the "late 1960's." This testimony is clearly not sufficient to allow a jury to conclude that decedent did in fact have knowledge of the hazards of asbestos in the early 1960's.

Another deficiency in OCF's argument is the fact that it seeks to hold the decedent responsible for failing to recognize and react to the articles in the Asbestos Worker magazine, while OCF has likewise failed to recognize and react to the articles. OCF is essentially arguing that decedent should have been so influenced by the articles regarding the health hazards of exposure to asbestos that he should have given up his livelihood as an insulator. Yet OCF was not so influenced by the articles as to put warnings on its asbestos products. Had OCF placed a warning on its asbestos products and decedent still chose to be exposed to the products, the court could safely conclude that decedent assumed the risk and OCF would therefore be entitled to an assumption of the risk instruction. In the case at bar, since OCF chose to ignore the articles rather than provide warnings, the trial court properly denied OCF's assumption of the risk instructions.

OCF further contends that it is entitled to a new trial because the circuit court erred when it failed to submit to the jury OCF's comparative fault instruction. This non-Illinois Pattern Jury Instruction (IPI) informed the jury that it could reduce the plaintiff's damages if it found that decedent assumed the risk of his injury or that any other conduct on the part of the decedent contributed to his injury. The instruction also provided that the jury was entitled to consider the conduct of manufacturers of other asbestos products to which the decedent was exposed in reducing damages.

A party has a right to have the jury informed about the issues presented, the applicable legal principles, and the facts which must be proved to support a verdict. (*Korpalski v. Lyman* (1983), 114 Ill. App. 3d 563, 449 N.E.2d 211.) IPI instructions should be given unless they inaccurately state the law. (*Erickson v. Muskin Corp.* (1989), 180 Ill. App. 3d 117, 180 N.E.2d 475.) Only when the IPI does not contain a proper instruction on the subject may a non-IPI instruction be given. *Fravel v. Morenz* (1986), 151 Ill. App. 3d 42, 502 N.E.2d 480.

It logically follows that a non-IPI instruction misstating the law is not to be tendered to the jury. In the instant case, the trial court properly excluded OCF's non-IPI comparative fault instruction since it misstates Illinois law. The inaccurate portion of the compara-

tive fault instruction is that which allows the jury to consider the conduct of manufacturers of other asbestos products to which the decedent was exposed in reducing damages. The fact that a plaintiff used a variety of asbestos products does not relieve defendant of liability for his injuries. (*Lipke v. Celotex Corp.* (1987), 153 Ill. App. 3d 498, 505 N.E.2d 1213.) Although other portions of the comparative fault instruction may be correct, this inaccurate statement of the law was sufficient to allow the trial court to reject the entire instruction.

■■ OCF next contends that the court erred when it barred OCF's counsel from reading Mrs. Skonberg's deposition testimony to the jury and determined that because Mrs. Skonberg was available as a witness, OCF could use the deposition only for impeachment purposes. Discovery depositions may be used to impeach the testimony of the deponent as a witness, as a party admission, and for any purpose for which an affidavit may be used. (*Security Savings & Loan Association v. Commissioner of Savings & Loan Associations* (1979), 77 Ill. App. 3d 606, 396 N.E.2d 320.) Neither the availability of the witness to testify nor the presence of the witness at court has any bearing on the admissibility of a discovery deposition as evidence. *Behrstock v. Ace Hose & Rubber Co.* (1986), 147 Ill. App. 3d 76, 496 N.E.2d 1024.

■■ A review of the record indicates that OCF's request was not denied in a blanket fashion. Instead, the trial court ruled that two of the proposed excerpts of the deposition could be read to the jury over plaintiff's objection. Despite the ruling, OCF elected not to read these portions to the jury. Moreover, the trial court barred OCF from reading certain portions of the discovery deposition not only because plaintiff was available to testify, but also because some of the statements OCF sought to read either were not admissions or had already been thoroughly explored during direct or cross-examination when the plaintiff testified in her own case. With respect to the remaining excluded excerpts, had these portions indeed been inconsistent with Mrs. Skonberg's trial testimony, OCF had the opportunity to call these excerpts to the attention of the jury through the impeachment process. Accordingly, the trial court's ruling on this matter was not an abuse of its discretion.

OCF finally contends that the circuit court incorrectly barred evidence at trial of health-related articles or similar information that may have been available to decedent during his career as an insulator. Specifically, the court precluded introduction of issues of the Asbestos Worker magazine as substantive evidence that OCF's products were not unreasonably dangerous. OCF maintains that the Asbestos Worker magazines offered were admissible as substantive evidence of

the knowledge of the community of insulators of which decedent was a member.

Strict liability for an unreasonably dangerous product applies only when the product is dangerous to the extent beyond that which would be contemplated by the ordinary person with the ordinary knowledge common to the community as to its characteristics. (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368.) The information contained in the magazines, however, has no bearing on the issue of what the community of insulators knew and when they knew it. There is simply no indication that the Asbestos Worker magazine was widely circulated and read by many asbestos workers. On the other hand, there is testimony from John McDonnell, decedent's co-worker, that although he received the Asbestos Worker magazine, he read only the wage information and the death notices. Consequently, the evidence is insufficient to conclude that simply because the decedent and McDonnell received the Asbestos Worker magazine, the hazards of asbestos were contemplated by the community of asbestos workers.

OCF also sought to introduce Asbestos Worker magazine as proof that decedent assumed the risk of exposure to asbestos products. OCF maintains that articles printed in the publication appeared in the same time period that decedent worked with OCF products and thereby apprised decedent of the dangers associated with asbestos.

In support of this contention, OCF relies on *Williams v. Brown Manufacturing Company* (1970), 45 Ill. 2d 418, 261 N.E.2d 305, and *Erickson v. Muskin Corporation* (1989), 180 Ill. App. 3d 117, 535 N.E.2d 475. However, these cases are distinguishable since they permitted a jury to consider circumstantial evidence concerning assumption of the risk only after the user of the product testified that he was unaware of the hazard. In the instant case, there was no statement by the user of the product because decedent died without ever having testified. Furthermore, the testimony of Mrs. Skonberg and McDonnell was insufficient to establish exactly what the decedent read or understood during the time period before or during decedent's exposure to OCF's asbestos products. Therefore, the trial court properly excluded the Asbestos Worker magazine as evidence that the product was unreasonably dangerous or that decedent assumed the risk.

The judgment of the circuit court is affirmed.

Affirmed.

LORENZ, P.J., and MURRAY, J., concur.