LANCE ERICKSON *et al.*, Plaintiffs-Appellants, v. MUSKIN CORPORA-
TION, Defendant-Appellee.

First District (5th Division) No. 1—87—3212

Opinion filed February 3, 1989.—Modified on denial of rehearing
March 17, 1989.

118

Corboy & Demetrio, P.C., of Chicago (Philip H. Corboy, Thomas A. Demetrio, and David A. Novoselsky, of counsel), for appellants.

Williams & Montgomery, Ltd., of Chicago (James K. Horstman, Barry L. Kroll, Daniel K. Cray, and C. Barry Montgomery, of counsel), for appellee.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Plaintiffs, Lance and Valerie Erickson, appeal from various orders and the net verdicts in a strict liability/assumption of the risk case. The following facts are basic to this appeal.

On the afternoon of July 4, 1981, Lance and Valerie attended a party at the home of Charles Langdon, Sr. The Langdon's had installed an above-ground pool designed and manufactured by defendant, Muskin Corporation, in 1974. The oval pool was 33 feet long, 18 feet wide, and the water depth varied from between 3½ and 4½ feet; it was deeper at the ends than in the middle as the result of an expandable liner. It is undisputed that Lance had consumed no alcoholic beverages.

Sometime during that afternoon, Lance climbed onto the deck and asked Eric Stenerson, who was in the pool, to move an inner tube over to the left side so Lance could dive through it. After making a head-first dive through the center of the inner tube, Lance hit his head on the bottom of the pool. He received a compression fracture of the fifth cervical vertabra, resulting in quadriplegia.

Subsequently, Lance brought a personal injury suit against defendant Muskin and the pool liner manufacturer, Swimline Corporation. His wife, Valerie, brought a loss of consortium suit against Swimline and the retail distributor, Marathon. Muskin brought a third-party action against Langdon, Sr., and Marathon. Before trial and pursuant to the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1985, ch. 70, par. 301 *et seq.*), the Erickson's entered into the following settlement agreement with all defendants except Muskin, as follows:

| | Lance | Valerie |
|---|---|---|
| From Swimline Corporation: | $25,000 | $125,000 |
| From Langdon, Sr.: | 10,000 | 90,000 |
| From Marathon Enterprises: | 5,000 | 45,000 |
| | $40,000 | $260,000 |

The trial court, in a nonfinal order, ruled that the gross amounts of the settlements were in good faith, but after Muskin objected to the allocation thereof, the court declined to rule on the good faith of the allocation.

The Ericksons then proceeded to trial only against Muskin on the strict liability allegation, i.e., failure to warn. The jury, in answer to a special interrogatory, found that the pool was unreasonably dangerous because of a lack of warning regarding the dangers of diving into it and that Lance's injuries were proximately caused by that unreasonably dangerous condition. In rendering its damages verdicts, the jury determined that Lance had assumed the risk to the extent of 96%. Based on Lance's assumption of the risk, the jury also reduced Valerie's consortium damages by 96%. The gross verdicts totaled $3,508,679 for Lance and $518,750 for Valerie. After the reductions for assumption of the risk, Lance received $140,347 and Valerie was awarded $20,750.

Thereafter, the court granted Muskin's post-trial motion to allocate the pretrial settlement funds in the same ratio as the total verdicts bore to each plaintiff: Lance = $262,500; Valerie = $37,500. The court then set off these settlement amounts against the net verdicts, resulting in awards of $0 to each plaintiff.

Plaintiffs appeal from the jury's net verdicts, the order granting defendant Muskin's post-trial motion for allocation of the pretrial settlement funds, and the denial of their post-trial motion. Plaintiffs raise the following issues on appeal: (1) whether the affirmative defense of assumption of risk should have been submitted to the jury in this, a failure to warn based on strict liability, case; (2) whether the jury's finding that Lance had assumed 96% of the risk was against the manifest weight of the evidence; (3) whether the jury instructions "fairly, fully and comprehensively" informed it of the relevant legal principles; (4) whether Lance's 96% assumption of risk was properly imputed to Valerie; and (5) whether the post-trial allocation of pretrial settlement funds was proper. Plaintiffs are alternatively requesting that this court grant various judgments notwithstanding the verdicts, a new trial, and vacatur of the allocation of settlement order. In order to determine several of these issues, additional facts from the record will be set forth in the discussion.

ASSUMPTION OF THE RISK

This case went to the jury on the single issue as to whether Muskin had a duty to warn of an unreasonably dangerous condition in its above-ground pools. The jury affirmatively answered defendant's

special interrogatory: "Were the plaintiffs' injuries and damages prox-imately caused by an unreasonably dangerous condition which existed in the Muskin swimming pool at the time it left the control of Muskin Corporation?" Muskin has not contested that finding in this appeal. Plaintiffs argue that an assumption of risk defense is legally and logi-cally inconsistent with the jury's finding of a breach of a duty to warn and, thus, this defense should not have been submitted to the jury. We disagree with plaintiffs as to their legal inconsistency argument.

■ Illinois courts have recognized that the doctrine of assumption of risk is an affirmative defense in product liability cases. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305.) Further, a duty to warn of an unreasonably dangerous condition ex-tends to the use of the product by an ordinary person with the ordi-nary knowledge common to the community regarding the characteris-tics of the product. (*Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211, 412 N.E.2d 959, citing Restatement (Second) of Torts §402A, comment *i* (1965).) Accordingly, the duty to warn is determined using an objective standard, *i.e.*, the awareness of an ordinary person.

■ In order to show that a plaintiff assumed a risk, a defendant has the burden of proof to demonstrate that plaintiff knew the prod-uct was in a dangerous condition and proceeded to use it in disregard to the known danger. (*Sweeney v. Max A.R. Matthews & Co.* (1970), 46 Ill. 2d 64, 264 N.E.2d 170.) In determining whether a plaintiff as-sumed the risk in a strict liability case, the trier of fact focuses on the knowledge and conduct of that particular plaintiff, *i.e.*, a subjective standard is applied. *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305.

Prior to 1983, it would have been legally inconsistent to have found a defendant strictly liable in a products case it if was also de-termined that a plaintiff had assumed any of the risk. However, in that year and while this trial was proceeding, the supreme court in *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197, adapted to strict liability cases the comparative fault principles earlier established for negligence cases in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886. The *Coney* court stated that application of com-parative fault principles in strict products liability cases would not frustrate the policy reasons underlying strict liability, since "[T]he manufacturer's liability remains strict; only its responsibility for dam-ages is lessened by the extent the trier of fact finds the consumer's conduct contributed to the injuries." *Coney*, 97 Ill. 2d at 116, 454 N.E.2d at 202, citing *Daley v. General Motors Corp.* (1978), 20 Cal. 3d 725, 575 P.2d 1162, 144 Cal. Rptr. 380.

However, the *Coney* court excepted from recovery-reducing conduct, *i.e.*, assumption of risk or misconduct, "a consumer's unobservant, inattentive, ignorant, or awkward failure to discover or guard against a defect." (*Coney*, 97 Ill. 2d at 119, 454 N.E.2d at 204.) In other words, mere contributory negligence would not act as a damage-reducer in strict liability cases. We agree with the view expressed in Justice Ryan's dissent in *Simpson v. General Motors Corp.* (1985), 108 Ill. 2d 146, 483 N.E.2d 1, wherein it is considered inconsistent to not consider the causative fault of all parties in the apportionment of damages. If Illinois had followed the majority trend in these cases by adopting the principles of "pure" comparative fault (or causation) in strict liability cases, thus eliminating assumption of risk, we would not be confronted with resolving the oft-times extensive litigation issues arising out of such actions. Moreover, such causes of action accruing on or after November 25, 1986, are further complicated by enactment of a provision in the "tort reform" legislation in which a plaintiff's misuse or assumption of the risk to the extent of more than 50% will absolutely bar strict liability. Ill. Rev. Stat. 1987, ch. 110, par. 2—1116.

■ In any event, we must follow the rules delineated in *Coney* and elucidated in *Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 475 N.E.2d 817: where a defendant's product caused the injury but plaintiff's misuse or assumption of the risk contributed to the damages, comparative fault principles operate to reduce plaintiff's damage recovery in the amount which the trier of fact determines the plaintiff has caused by his conduct. The *Auton* court characterized this concept as "comparative damages." *Auton*, 105 Ill. 2d at 546, 475 N.E.2d at 820.

We do note that no Illinois court has directly ruled on the issue of whether assumption of risk is appropriate in a failure to warn products liability case. However, we believe that this court's decision in *Pell v. Victor J. Andrew High School* (1984), 123 Ill. App. 3d 423, 462 N.E.2d 858, when read in tandem with the policy considerations expressed in the *Coney* and *Auton* cases, does give some perspective on the issue. In *Pell*, a failure to warn case involving a mini-trampoline, an issue arose concerning the trial court's refusal to give assumption of risk and comparative negligence instructions to the jury. The *Pell* court held that the facts of the case were insufficient to establish that plaintiff's negligence rose to the requisite level for the application of the doctrines of misuse or assumption of the risk, and the requested instructions were therefore properly denied.

Plaintiffs are correct in stating that the *Pell* decision did not actu-

ally consider whether assumption of risk was appropriate in failure to warn cases. However, we do not agree with them that it is "ludicrous" to take that decision one step further by declaring that where the facts support an assumption of risk defense—even in a failure to warn case—appropriate instructions should be given. In other words, we see no reason to differentiate between failure to warn cases and other types of strict products liability cases, if the policy considerations expressed in the above-discussed decisions are to have meaning.

■ Accordingly, under the applicable law (pre-1986), we find no legal inconsistency between the jury's verdicts and its answer to the special interrogatory. Using an objective, reasonable person standard, it found defendant Muskin strictly liable for its failure to warn of an unreasonable dangerous condition. Then, using a subjective standard—what Lance actually knew about the danger of diving into this pool as he did—the jury found that he had assumed 96% of the risk. This latter finding was applied only to the damages-reducing portion of its deliberations, not to the liability issue.

■ We cannot agree with plaintiffs that the affirmative answer to the interrogatory was the equivalent of finding that the lack of a warning on the pool was the *sole* proximate cause of Lance's injury. The answer reflected the jury's determination that Muskin breached its nondelegable duty to warn the ordinary user of the dangers of diving into the pool. However, the verdicts indicated that the jury further found that Lance knew of the danger involved in diving into 4½ feet of water and did it anyway, thus assuming the risk. Therefore, although it may appear illogical for the doctrines of strict liability and assumption of the risk to coexist in the same cause, the *Coney* ruling leaves no doubt that the two doctrines, under the proper circumstances, may be legally compatible. As a result, we must conclude that the defense of assumption of risk was properly submitted for the jury's consideration.

■ ■ Plaintiffs also allege that Lance's conduct did not constitute assumption of the risk, contending that, at the most, he was negligent. They rely on the *Coney* rule that a person's unobservant, inattentive, ignorant, or awkward failure to discover or guard against a defect is not a damage-reducing factor. (*Coney*, 97 Ill. 2d at 119, 454 N.E.2d at 204.) We must disagree with this argument. If there is some evidence from which a jury might infer plaintiff's assumption of the risk, then it is within the jury's province to determine that issue. (*Scott v. Dreis & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971, 326 N.E.2d 74.) The test for determining whether a plaintiff has

assumed the risk was set forth in *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305. A subjective test is used, *i.e.*, what plaintiff actually knew. Plaintiff's age, experience, knowledge, and understanding, in addition to the obviousness of the defect and the danger it poses will all be relevant factors for the jury's consideration. Furthermore, a jury need not rely solely on a plaintiff's statements as to what he knew, but instead should consider all of the evidence. In other words, a jury need not accept a plaintiff's testimony that he was unaware of the danger if the evidence shows the contrary. *Williams*, 45 Ill. 2d at 430-31, 261 N.E.2d at 312.

■ A reviewing court cannot overturn a jury verdict unless it is clearly erroneous or against the manifest weight of the evidence, and the evidence must be viewed in a light most favorable to the appellee (here, Muskin). (*Bautista v. Verson Allsteel Press Co.* (1987), 152 Ill. App. 3d 524, 504 N.E.2d 772.) The record reveals that Lance was an air traffic controller and the son of an air traffic controller—as the trial court stated, "born and bred into safety." At the time of his accident, Lance was a 25-year-old college graduate and was 6 feet 5 inches tall and weighed over 200 pounds. He played football, baseball, and basketball while in school and earned a basketball scholarship to the University of Wisconsin. He had taken swimming lessons when he was six or seven years old. He had been swimming for many years, learning to dive on his own. He admitted to diving off both low and high boards and to knowing about the relationship between water depth and the angle of dives. The jury heard the following responses while Lance was being cross-examined by defense counsel C. Barry Montgomery:

"Q. I suppose what I'm asking is you knew before this accident about diving from sides of pools; diving boards, low diving boards, high diving boards?

A. Yes.

Q. Now, I take it that before you would dive into a body of water, whether it be a high dive, low dive, side of a pool, you would want to know how deep the water was?

A. Yes.

Q. You wouldn't want to dive into water that was too shallow?

A. True.

Q. If you did, you could get hurt?

A. I suppose.

\*\*\*

Q. \*\*\* [Y]ou wouldn't dive from a high dive into four and a

half feet of water, would you?

A. No.

Q. So you knew something about the depth of the water in relation to diving?

A. Yes."

■ Also during the questioning, Lance answered that he wouldn't want to dive virtually straight down into 4½ feet of water and agreed with counsel that he might break his neck if he did so. However, it is unclear as to whether Lance was speaking here of his knowledge prior to or subsequent to his accident. Lance also responded negatively when asked if he was aware of the depth of the water. In addition, the jury was aware that Lance was 6 feet 5 inches tall and had been walking around in the water for at least an hour before his accident. It was also known that Lance directed that an inner tube be specifically placed so he could dive through the center and, by his own words, that he made a head first, hands first dive through the inner tube.

The jury did not have to accept Lance's denial of knowing the dangers of diving head first into the pool. It could evaluate all of the evidence in concluding that Lance knew a head-first dive into shallow water could result in serious injury. Moreover, plaintiff's use of expert testimony to show that the public may not be aware of the hazards of diving into an above-ground pool is not relevant to what Lance himself knew. Lance's knowledge, or lack thereof, and whether he had assumed all or part of the risk was a question of fact to be resolved by the jury. Viewing the evidence in its aspect most favorable to Muskin, we cannot say that the jury's determination, based on the above facts, that Lance assumed 96% of the risk was against the manifest weight of the evidence.

JURY INSTRUCTIONS

■■ ■ Plaintiffs next object to the trial court's refusal to give various instructions to the jury. A party has the right to have the jury informed about the issues presented, the applicable legal principles, and the facts that must be proved to support a verdict. (*Korpalski v. Lyman* (1983), 114 Ill. App. 3d 563, 449 N.E.2d 211.) While the trial court is required to instruct the jury on all issues by the evidence, the determination as to what issues actually have been raised is within the court's discretion. (*Lounsbury v. Yorro* (1984), 124 Ill. App. 3d 745, 464 N.E.2d 866.) The instructions should not mislead the jury or prejudice a party, nor may they be argumentative. (*Chakos v. Illinois State Toll Highway Authority* (1988), 169 Ill. App. 3d 1018, 524

N.E.2d 615.) In reviewing the propriety of jury instructions, they are to be taken as a whole in determining if they are clear enough so as not to mislead and whether they fairly and accurately state the applicable law. (*Ralston v. Plogger* (1985), 132 Ill. App. 3d 90, 476 N.E.2d 1378.) Furthermore, even if an instruction was erroneously refused by the trial court, reversal is required only where prejudice is shown. (*Friedman v. Park District* (1986), 151 Ill. App. 3d 374, 502 N.E.2d 826.) After examining the instructions given, as a single unit, we conclude that the trial court did not err in refusing plaintiffs' tendered instructions.

 Plaintiffs claim that the jury should have been given their non-Illinois Pattern Jury Instruction (IPI): "[p]laintiff's inattentive, ignorant or awkward failure to discover or guard against the unreasonably dangerous condition of the swimming pool does not constitute assumption of the risk and is not a damage reducing factor." They correctly state that this instruction accurately reflects current law, as expressed in *Coney* and its progeny, and contend that its omission resulted in the jury being denied guidelines necessary to weighing Lance's conduct against Muskin's liability. The record is cited in purporting to show that Muskin advanced the theory that Lance's actions had been "foolish," "improper," and "dumb," thus requiring that the jury be instructed as to the law regarding mere negligence in strict liability cases. However, we found that the above-mentioned words were each used perhaps once or twice by defendant in over 2,000 pages of transcript. None of those instances could be said to constitute the advancement of a theory. Muskin throughout the trial contended that Lance actually knew of the dangers associated with diving into 4½ feet of water. Moreover, according to our supreme court, there can be no comparison of one party's negligence with another party's strict liability. *Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 475 N.E.2d 817.

 We first note that, pursuant to Supreme Court Rule 239(a) (107 Ill. 2d R. 239 (a)), IPI instructions should be given unless they inaccurately state the law. Only when the IPI does not contain a proper instruction on the subject may a non-IPI instruction be given (*Fravel v. Morenz* (1986), 151 Ill. App. 3d 42, 502 N.E.2d 480.) In 1986, IPI instructions were supplemented with a chapter on strict liability. (Illinois Pattern Jury Instructions, Civil, No. 400.00 *et seq.* (2d ed. Supp. 1986) (hereinafter IPI Civil 2d No. 400.00 *et seq.* (Supp. 1986).) The lengthy introduction to chapter 400 contains a discussion on recent changes in strict liability law, including the supreme court's decision in *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454

N.E.2d 197. After analyzing the *Coney* decision, the drafting commit-
tee concluded that its modified instructions, based on the comparative
negligence instructions, were sufficient in assumption of risk cases.
(IPI Civil 2d No. 400.00 (Supp. 1986).) The committee also recom-
mended that no instructions on the duty to warn be given (IPI Civil
2d No. 400.07 (Supp. 1986)), and that further instructions, other than
those given in chapter 400, should not be given regarding the eviden-
tiary facts used in determining whether there was an assumption of
the risk. IPI Civil 2d No. 400.05 (Supp. 1986).

The trial court did give the following chapter 400 instructions:
No. 400.04—definition of products liability proximate cause; No.
400.10—due care not a defense; No. 400.06—definition of "unreason-
ably dangerous"; No. 400.03—reduction of damages for assumption of
risk; No. 400.02—burden of proof as to proximate cause; No. 400.01—
issues raised by pleadings (failure to warn, assumption of risk); and
No. 400.0-3.01—definition and burden of proof as to assumption of
risk. IPI Civil 2d No. 400.00 *et seq.* (Supp. 1986).

These IPI instructions, along with others given, clearly advised
the jury as to the issues presented during trial and the applicable law;
no others were needed. Furthermore, we agree with the trial court
that plaintiffs' instruction, taken from the *Coney* decision, was argu-
mentative on its face, especially where the jury was informed that
what Lance actually knew was crucial to an assumption of the risk
finding. It stands to reason that if a person did not actually know of a
danger, then there would be no assumption of the risk and no reduc-
tion of damages. It is entirely proper to refuse an instruction which
accurately states the law if it is misleading or argumentative. *Chakos
v. Illinois State Toll Highway Authority* (1988), 169 Ill. App. 3d 1018,
524 N.E.2d 615.

■ Plaintiffs also contend that refusal of six other instructions
was error. These instructions concerned the issue of Muskin's liability.
However, since Muskin was found liable, we fail to understand how
plaintiffs were prejudiced by the omissions. Plaintiffs' argument is
that failure to give the proffered instructions (*e.g.*, failure to warn is a
nondelegable duty, presumption that a warning would have been read
and heeded), denied the jury knowledge of applicable law necessary
for it to fairly balance Lance's conduct against Muskin's conduct.

We disagree with plaintiffs. What Muskin did or did not do is not
relevant to the issue of Lance's actual knowledge. "The manufacturer
is liable without regard to negligence, and consequently no compari-
son can be made insofar as liability is concerned between the conduct
of the manufacturer and that of the injured party." (*Auton v. Logan*

*Landfill, Inc.* (1984), 105 Ill. 2d 537, 546, 475 N.E.2d 817, 820, explaining *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197.) The finding of a 96% assumption of risk applied only to how much Lance actually knew regarding the dangers involved in diving as he did; the elements of strict liability were irrelevant to this finding.

We therefore find that the instructions given to the jury adequately informed the jury and the court's refusal of certain other instructions was not reversible error.

VERDICT REDUCTION

■■■ Plaintiffs next argue that Valerie's claim for loss of consortium should not have been reduced by the amount of Lance's assumption of the risk. We agree with plaintiffs. The precise question as to whether a consortium claim is independent or derivative, in relation to damages in assumption of the risk cases, since the adoption of comparative fault principles has not been directly answered. However, our determination of this issue is guided by a trilogy of supreme court decisions revolving around consortium claims.

In *Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 454 N.E.2d 210, it was held that a wife's loss of consortium claim was not barred by the two-year statute of limitations applicable to her husband's personal injury action, even though the defendant had argued that the wife's claim should be barred because it was derivative of the husband's cause. The *Hammond* court also denied punitive damages in consortium cases because "the injury is 'indirect,' or derivative in nature, and recovery in such actions is intended only as compensation." *Hammond*, 97 Ill. 2d at 212, 454 N.E.2d at 219.

Subsequent to *Hammond*, the court decided the case of *Brown v. Metzger* (1984), 104 Ill. 2d 30, 470 N.E.2d 302, wherein it ruled that an injured spouse's settlement release for his personal injury claim did not bar his wife from proceeding with her loss of consortium suit. The court noted that in the past, loss of consortium actions were derivative (see, *e.g., Mitchell v. White Motor Co.* (1974), 58 Ill. 2d 159, 317 N.E.2d 505; *Rollins v. General American Transportation Corp.* (1964), 46 Ill. App. 2d 266, 197 N.E.2d 68 (cases relied on by Muskin).) The *Brown* court, continued, "[m]ore recently, however, this court has spoken to the contrary in *Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 208-09, ***. The clear implication of that holding is, of course, that the right of the deprived spouse to recover does not depend on whether the impaired spouse's cause of action is still viable." *Brown*, 104 Ill. 2d at 38, 470 N.E.2d at 306.

More recently, the court in *Page v. Hibbard* (1987), 119 Ill. 2d 41, 518 N.E.2d 69, considered whether a defendant employer could enforce a workers' compensation lien against settlement proceeds received by an injured employee's wife for release of her loss of consortium claim against a third-party tortfeasor. Although the decision was based, in part, on the provisions of the relevant workers' compensation statute, the *Page* court also relied on the *Hammond* and *Brown* decisions, stating that a consortium action "is not a derivative claim brought by the spouse as the personal representative of the employee, but is an independent action to recover for injuries the spouse has suffered, such as loss of support and loss of society." *Page*, 119 Ill. 2d at 48, 518 N.E.2d at 72.

In addition, several appellate court decisions have relied on this "independent" concept. It has been held that a loss of consortium claim is a separate cause of action for insurance purposes. In *Giardino v. Fierke* (1987), 160 Ill. App. 3d 648, 513 N.E.2d 1168, a wife successfully argued that her loss of consortium injury was separate from her husband's claim for bodily injuries within the meaning of an insurance policy. Although the court based its holding upon the policy language, it indicated that the consortium claim was not dependent on her husband's claim. It has also been stated that the elements of injury to companionship and conjugal relations in a loss of consortium claim are personal to the claimant and cannot be included in the other spouse's jury award for personal injuries. *Pease v. Ace Hardware Home Center* (1986), 147 Ill. App. 3d 546, 498 N.E.2d 343.

Admittedly, these cases do not directly answer the question as to whether Valerie's verdict should have been reduced by the 96% assumption of the risk attributed to Lance. In the cases discussed above, the terms "derivative" and "independent" are both used to describe loss of consortium claims. However, the above decisions are indicative of a shift away from the pre-*Alvis* (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886) concepts that all contributory negligence of an injured spouse was imputed to the spouse claiming loss of consortium. It appears that the supreme court considers consortium claims derivative of the spouse's personal injury action only as to the requirement that the injured spouse must establish liability. Once liability is established, the consortium claim is an independent action personal to the claimant. We believe, therefore, that once liability is proved, it is fair and reasonable to compensate a loss of consortium claimant on the basis of his or her actual injuries without deducting any amount for the negligence of another—even that of a spouse.

In other words, the jury found that Muskin was liable to

Lance and, consequently, Muskin was also liable to Valerie since her injuries occurred as a result of Lance's injuries; thus, her claim is derivative. However, once this derivative basis for Valerie's injuries is established, her injuries, which are different from Lance's and personal to Valerie, are independent and she should therefore be independently compensated on the basis of her loss. Accordingly, Muskin is liable to Lance for his injuries minus his assumption of the risk percentage. Muskin is also liable to Valerie for the injuries incurred solely by her. Therefore, Valerie's verdict should not have been reduced because of Lance's assumption of the risk.

ALLOCATION OF SETTLEMENT FUNDS

In their final point, plaintiffs contend that the trial court erred in granting Muskin's post-trial motion for allocation of pretrial settlement funds on a *pro tanto* basis, *i.e.*, in the same ratio that the total verdicts bore to each plaintiff (7 to 1 ratio). In applying a *pro tanto* rule, Muskin, and the trial court, were guided by an Iowa Supreme Court decision, *Duggan v. Hallmark Pool Manufacturing Co.* (Iowa 1986), 398 N.W.2d 175, which we find is inapposite to the present case. Plaintiffs in the *Duggan* case were a husband seriously injured in a diving accident and his wife and children. After trial against one of the defendants, pretrial settlements with other defendants were adjusted so as to reflect the jury's assessment of fault percentages in a special verdict. However, the *Duggan* court specifically noted that the *pro tanto* rule applied only to causes of action accruing before the adoption of comparative negligence in Iowa. These latter cases would use a *pro rata* basis for settlement distributions.

It is apparent that the *Duggan* allocation formula is inapplicable here. In adopting comparative negligence, our supreme court said that fairness requires that a plaintiff's damages be "reduced by the percentage of fault *attributable to him*." (Emphasis added.) (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 25, 421 N.E.2d 886, 897.) Since we have found that Lance's assumption of the risk is not to be imputed to Valerie so as to cause a reduction in her damages verdict, the same principle should be applied to a good-faith settlement entered into before trial. Moreover, there is no evidence in the record that the jury entered its verdicts to a "family unit"; separate verdicts were entered as to each plaintiff. (See *Eaton v. Jackson* (1984), 128 Ill. App. 3d 893, 471 N.E.2d 651.) It is also true, as plaintiffs assert, that such a hindsight reallocation would operate to frustrate the policy underlying the Contribution Act by discouraging pretrial settlement agreements. See *Perez v. Espinoza* (1985), 137 Ill. App. 3d 762, 484 N.E.2d 1232.

Accordingly, we conclude that it was error to wait until the verdicts were delivered and to then allocate the pretrial settlement funds in the same ratio as the verdicts bore to each plaintiff.

In summary, we affirm the jury's finding of Lance's assumption of risk to the extent of 96% and his resulting net verdict of $140,347. We vacate that portion of the verdict entered in favor of Valerie which reflected a 96% reduction in her gross verdict of $518,750. We reverse the trial court's order allocating the pretrial settlement funds in the ratio that the total verdicts bore to each plaintiff. We remand this cause with directions that the trial court enter judgments in the net amounts of $100,347 for Lance and $258,750 for Valerie, such sums reflecting the appropriate settlement setoffs to be corrected net verdicts.

Affirmed in part; reversed in part; vacated in part and remanded with directions.

LORENZ and PINCHAM, JJ., concur.