SCOTT WILLE, Plaintiff-Appellant, v. NAVISTAR INTERNATIONAL TRANSPORTATION CORPORATION, Successor to International Harvester Company, Defendant-Appellee.

First District (6th Division)   No. 1—90—1875

Opinion filed December 6, 1991.

Baskin, Server, Berke & Weinstein, of Chicago (Burton I. Weinstein and John R. Malkinson, of counsel), for appellant.

Arnstein & Lehr, of Chicago (Arthur L. Klein and David B. Goodman, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Scott Wille, brought this action in the circuit court of Cook County seeking damages for injuries incurred when his hand became caught in a bunk feeder machine. Among the defendants were Navistar International Transportation Corporation (successor to International Harvester Company), which sold and distributed the bunk feeder; Alfred Wild, the farmer who employed plaintiff and owned the bunk feeder; and Kasten Manufacturing Corporation, the manufacturer. Navistar in turn filed a counterclaim against Kasten.

After a trial, a jury returned a verdict in favor of Navistar. The jury found in favor of plaintiff against Wild in the amount of $612,248.47, which it reduced by 20% ($122,500) for plaintiff's comparative negligence. The trial court entered judgments on these verdicts. On appeal, plaintiff seeks to recover the $122,500 from Navistar. Wild has not appealed the judgment against him. (Prior to trial, the trial court entered a default judgment against Kasten, an insolvent corporation. The jury returned a verdict against Kasten in the amount of $612,248.47, without any reduction. That decision is not involved in this appeal.)

Plaintiff appeals from the judgment entered in Navistar's favor and the denial of his post-trial motion. Plaintiff urges that Navistar's closing argument was prejudicial and violated the trial court's prior *in limine* order; that the trial court committed reversible error in failing to give certain jury instructions requested by plaintiff; that the trial court erred in refusing to preclude Navistar's expert from testifying regarding the "inadvertency" of plaintiff's conduct; and that the jury's verdict in favor of Navistar was against the manifest weight of the evidence.

In June 1979, Wild hired the 16-year-old plaintiff to assist in harvesting hay. Wild owned a "bunk feeder," which was designed for and sold by Navistar. The feeder is a type of conveyor belt used to unload hay from a wagon to a silo for storage. The feeder attaches to the side of the wagon and derives its power from the tractor's engine and is not functional apart from the wagon and tractor. Wild showed plaintiff how to use the equipment to unload hay, and during the several weeks prior to the incident, plaintiff unloaded 20 loads of hay daily using the bunk feeder.

On the day of the accident, when the bunk feeder initially jammed, Wild stuck his hand into the "clean-out hole" in the bunk feeder without turning off the power. The clean-out holes, each rectangular and measuring three by six inches, had no doors or guards preventing access to the clean-out holes. After several attempts, Wild dislodged the hay and the machine began functioning again. Later that day, when the feeder again jammed with hay, plaintiff stuck his hand into the opening several times to dislodge the hay, as he had seen Wild do earlier. Plaintiff testified that he felt "real uneasy" about sticking his hand into the hole and that he thought doing so involved "some danger." On the third attempt, plaintiff's hand got caught in the "pinch point" between the belt and the power roller. Plaintiff's hand was crushed and severely burned, requiring skin grafts and the amputation of several fingers.

Plaintiff testified that he read and followed all the operating instructions. Plaintiff knew there were rollers inside the feeder's conveyor belt, knew their approximate location and knew that one could access the rollers through the clean-out hole. Plaintiff also knew that the wagon bore a warning which cautioned users to disengage the engine before cleaning or servicing and knew that this warning applied to all farm equipment. He stated that he would not have placed his hand inside the hole if there had been a warning sticker on the feeder itself.

The parties do not dispute that there were no warning signs on the bunk feeder to caution users about the unguarded clean-out hole. Nor did the owner's manual contain instructions regarding the clean-out hole.

Plaintiff's expert, Dror Kopernick, a mechanical engineer specializing in machine safety, testified that the feeder was defective and unreasonably dangerous because the clean-out hole was unguarded and allowed access to the "pinch point"; the feeder lacked a warning advising of the danger of the clean-out hole; and the feeder failed to comply with all the applicable industry standards.

Navistar's expert, Randall Swanson, an expert in farm safety, testified that the feeder's design was safe and complied with applicable industry standards, and that sufficient warnings were provided. He further testified that the pinch point on the feeder was adequately guarded and complied with the American Society of Agricultural Engineers (ASAE) standard which requires that the pinch point be guarded from accidental or inadvertent conduct. Prior to Swanson's testimony, the trial court denied plaintiff's motion *in limine* to bar Swanson from rendering an opinion on the inadvertency of plaintiff's

conduct. According to Swanson, after plaintiff intentionally inserted his hand into the clean-out hole, his conduct could not be deemed "inadvertent."

Plaintiff's strict liability claim against Navistar alleged that the bunk feeder was defective because it lacked warnings near the clean-out hole and because the bunk feeder had no guard over the clean-out hole near the drive roller. Plaintiff sought recovery against Wild, the farmer who owned the equipment and employed plaintiff, for his negligence in supervising plaintiff.

Prior to trial, the trial court granted plaintiff's motion *in limine* precluding Navistar from asserting, suggesting or implying that plaintiff's injuries were caused by plaintiff's inattentive, negligent or careless conduct or by any misuse of the bunk feeder. These orders did not apply to Wild. The trial court denied plaintiff's motion *in limine* to bar evidence or argument that plaintiff assumed the risk of his injuries. At the close of the evidence, the trial court directed a verdict in plaintiff's favor on Navistar's affirmative defense of assumption of risk. The trial court subsequently denied plaintiff's request to instruct the jury regarding the directed verdict on assumption of risk, stating that plaintiff's counsel would "cover that in closing arguments." During closing arguments, over plaintiff's objection, Navistar repeatedly referred to plaintiff's conduct and knowledge of the dangers of the machine, arguing that plaintiff's conduct, not its product, was a proximate cause of the injuries. Navistar also argued that the product was not unreasonably dangerous.

On appeal, plaintiff contends that Navistar's references during closing argument to plaintiff's knowledge and conduct violated the trial court's prior *in limine* order and its directed finding for plaintiff on Navistar's assumption of risk defense, and thus, constituted reversible error.

■ A violation of an order granting a motion *in limine* can be the basis for a new trial only if the order is specific and the violation is clear. (*In re Estate of Loesch* (1985), 134 Ill. App. 3d 766, 481 N.E.2d 32.) When the likelihood of prejudice is great, the violation of an order *in limine* is reversible error. (*Shehy v. Bober* (1979), 78 Ill. App. 3d 1061, 398 N.E.2d 80.) Moreover, we will reverse a judgment based upon errors in closing argument when the errors are clearly improper and prejudicial. *Ferry v. Checker Taxi Co.* (1987), 165 Ill. App. 3d 744, 520 N.E.2d 733.

■ In this case, the court granted plaintiff's pretrial motions *in limine* which precluded Navistar from arguing or implying that plaintiff's conduct was inattentive, negligent or careless or that plaintiff

misused the bunk feeder. Despite the specificity and clarity of the order, Navistar's counsel nonetheless argued as follows during closing argument:

"NAVISTAR'S COUNSEL: Mr. Wille admitted that he knew that before he stuck his hand in the clean-out hole. He knew that there were moving parts inside of the opening. He knew he could get hurt—

MR. WEINSTEIN [Plaintiff's attorney]: Objection, your Honor, to this line of argument. There is no assumption of risk in this case. His conduct is not at issue.

THE COURT: You may proceed.

NAVISTAR'S COUNSEL: He admitted in court that before he put his hand in that hole he knew it was dangerous. He admitted in court that before he put his hand in the hole he knew he could get hurt.

He admitted in court that he knew approximately where the drive roller was before he put his hand in the cleanout hole.

He didn't shut the engine off to the tractor, he didn't turn the PTO lever to the off position.

He knew there were moving parts inside that bunk feeder. He knew it was dangerous to stick his hand in there near those moving parts. He knew he could get hurt.

He knew he had to shut off the machinery before servicing it but he didn't shut it off. And he did stick his hand into the moving parts and it was dangerous. And his hand did get caught and he was injured.

\* \* \*

MR. WEINSTEIN: Your Honor, objection—

NAVISTAR'S COUNSEL: —and he did not shut the engine off to tractor.

THE COURT: What is your objection? (WHEREUPON, a conversation was had off the record).

THE COURT: Overruled.

\* \* \*

NAVISTAR'S COUNSEL: So why did this accident happen? It happened because Mr. Wille ignored his own warning and he took what he knew to be the wrong—he did what he knew to be the wrong thing. He violated the basic rule of the farm safety he already knew about, 'Don't Stick Your Hand Near Moving Parts.' "

The record reveals approximately 11 pages of argument concerning plaintiff's conduct. By focusing on what plaintiff knew and what plain-

tiff did, Navistar improperly argued that plaintiff voluntarily encountered a known danger and assumed the risk of his injuries. Such argument clearly contradicted the trial court's prior *in limine* orders which specifically precluded reference to plaintiff's conduct. We believe that the likelihood of prejudice from Navistar's violation of the *in limine* orders was great and therefore constituted reversible error. On this basis, we remand the case for a new trial on Navistar's liability.

●■ ■ We also conclude that the trial court committed reversible error in refusing to inform the jury about its directed finding for plaintiff on the assumption of risk defense as to Navistar. In denying plaintiff's request for such an instruction, the trial court asserted that plaintiff's counsel "would cover that in [closing argument], and then [the jury] will get the instruction." A party is entitled to have the jury informed about the issues presented, the applicable legal principles and the facts that must be proved to support a verdict. (*Erickson v. Muskin Corp.* (1989), 180 Ill. App. 3d 117, 535 N.E.2d 475.) In reviewing the propriety of instructions on appeal, we must consider them as a whole in determining whether they are clear enough so as not to mislead and whether they fairly and accurately state the applicable law. (*Erickson v. Muskin Corp.*, 180 Ill. App. 3d 117, 535 N.E.2d 475.) Giving or denying jury instructions is in the trial court's discretion, and the refusal to give instructions will result in new trial only where a party shows serious prejudice to his right to a fair trial. (*Thompson v. Abbott Laboratories* (1990), 193 Ill. App. 3d 188, 549 N.E.2d 1295; *In re Estate of Loesch*, 134 Ill. App. 3d 766, 481 N.E.2d 32.) We believe that the trial court's refusal to inform the jury about its directed finding for plaintiff on the assumption of risk defense offered by Navistar misled the jury by failing to fully set forth the applicable law and seriously prejudiced plaintiff's right to a fair trial.

As the trial court anticipated, plaintiff's counsel told the jury during closing argument that the assumption of risk defense did not apply to Navistar and that plaintiff's negligence was only significant with respect to plaintiff's claim against Wild. The trial court, however, did not inform the jury about its directed finding on assumption of risk, or define such concept for the jury. Moreover, despite plaintiff's directed finding on the assumption of risk defense, the court permitted Navistar's counsel to argue at length that plaintiff's conduct caused his injury. We believe that by allowing Navistar to vigorously present such argument to the jury over plaintiff's objection, the trial court tacitly indicated to the jury that it could consider plaintiff's conduct as to Navistar. Moreover, despite plaintiff's counsel's remarks

during closing argument regarding the inapplicability of the assumption of risk defense, the jury could construe such statements as advocacy, not "law," especially given Navistar's focus on plaintiff's conduct. Taken as a whole, we believe that the absence of instructions, combined with Navistar's argument emphasizing plaintiff's conduct, failed to accurately and fairly inform the jury in this case that it could not consider plaintiff's conduct in determining Navistar's liability. As such, we find that prejudice resulted which requires us to reverse and remand this cause for a new trial.

■■ Navistar concedes on appeal that in closing argument it asserted that plaintiff was a proximate cause of his injuries, but maintains that such argument was proper because causation was at issue in the case. It is well established that a strict products liability plaintiff must prove that his injury resulted from an unreasonably dangerous condition of the product. (*Rios v. Navistar International Transportation Corp.* (1990), 200 Ill. App. 3d 526, 558 N.E.2d 252.) Navistar maintains that plaintiff, and not any condition of defendant's product, was a proximate cause of plaintiff's injuries and that it was properly permitted to argue this in closing argument. We believe, however, that after the trial court entered the *in limine* order barring Navistar from arguing plaintiff's conduct, and then directed a finding for plaintiff on assumption of risk, Navistar was barred from making plaintiff's knowing and intentional conduct an issue, as it forcefully did during closing argument. As such, we reject its attempt to cloak the argument as one of sole proximate cause. Moreover, because we conclude that such extensive references and argument likely confused the jury, we find that the comments were highly prejudicial.

■■ Because we remand this case, we consider several other issues that will likely arise on remand. Plaintiff claims that the trial court erred in refusing to instruct the jury as follows on the applicable ASAE standard:

> "If you decide that Navistar failed to comply with these standards, you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not the bunk feeder was unreasonably dangerous."

The court rejected plaintiff's instruction as "verbose" and relied instead upon Navistar's non-Illinois Pattern Jury Instructions (IPI) instruction, which provided as follows:

> "[Y]ou may consider whether [the product] complied with relevant industry standards. A standard is relevant if it applies to the equipment and the use of that equipment involved in a particular case."

We do not believe that the proffered instruction failed to advise the jury that compliance with the standard was only one factor to be considered. Rather, the instructions as a whole fairly and accurately informed the jury of the various factors to be considered in determining whether Navistar's product was unreasonably dangerous. A trial court has considerable discretion in determining the form of an instruction (*Ralston v. Plogger* (1985), 132 Ill. App. 3d 90, 476 N.E.2d 1378), and we cannot say that the trial court erred in giving Navistar's instruction on the industry standard.

■ We also reject plaintiff's assertion that the trial court erred in refusing to instruct the jury on a manufacturer's nondelegable duty. Plaintiff tendered this instruction in anticipation of Navistar's argument that Wild's failure to properly instruct plaintiff caused the injury. Here, the trial court instructed the jury separately in the elements required to support plaintiff's action against Navistar and against Wild. Moreover, the court instructed the jury: "You will decide each defendant's case separately as if each were a separate lawsuit." The court also informed the jury as follows:

> "If you decide that the plaintiff has proved all the propositions of his case, against defendant Navistar, then it is not a defense that the defendant, Navistar, did not create the condition which rendered the bunk feeder unreasonably dangerous and that the condition of the bunk feeder existed before the bunk feeder came under the control of defendant, Navistar."

Although these instructions do not specifically describe Navistar's "nondelegable duty," we conclude that these instructions as a whole clearly advised the jury as to Navistar's duty and the applicable law. As such, no others were needed. See *Erickson v. Muskin Corp.*, 180 Ill. App. 3d 117, 535 N.E.2d 475.

■ We also consider plaintiff's contention that the trial court improperly allowed Navistar's expert, Swanson, to testify about the inadvertency of plaintiff's conduct. Plaintiff's expert, Kopernick, testified that the feeder was unreasonably dangerous because the clean-out hole allowed access to an unguarded "pinch point." In so concluding, Kopernick relied upon an ASAE safety standard which requires in pertinent part as follows:

> "The acute entry angles of exposed gears, belts, and chain drives and idlers shall be covered by shields, rods, mesh or other portions of the machine *to minimize the possibility of inadvertent contact*." (Emphasis added.)

Kopernick quoted this standard, tendered copies to the jury and explained why he believed that plaintiff's contact was inadvertent. Ko-

pernick concluded that the feeder was unreasonably dangerous because "[the pinch point] was not guarded against accidental contact." Because the inadvertency of plaintiff's contact relates directly to the applicability of this safety standard and the determination of whether the feeder was unreasonably dangerous, we believe that Swanson's opinion would have been helpful to the jury and that Navistar was entitled to offer such testimony. We conclude that the trial court properly allowed Swanson to offer his opinion as to the inadvertency of plaintiff's conduct.

Finally, we must consider plaintiff's contention that he is entitled to a judgment notwithstanding the verdict.

A judgment notwithstanding the verdict is appropriate only where the evidence when viewed in a light most favorable to the opponent so overwhelmingly favors the movant that no contrary verdict can stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504; *Ziekert v. Cox* (1989), 182 Ill. App. 3d 926, 538 N.E.2d 751.

To recover for strict liability in tort, a plaintiff must prove that the product was unreasonably dangerous and that plaintiff's injuries resulted from such condition. (*West v. Deere & Co.* (1990), 201 Ill. App. 3d 891, 559 N.E.2d 511.) Whether a product is defective, and therefore, unreasonably dangerous, is ordinarily a fact for the jury. (*Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 507 N.E.2d 1213.) Plaintiff must also prove that his injury proximately resulted from the product's alleged defective condition (*Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 508 N.E.2d 1201), and a legal inference of defectiveness may not be drawn merely from evidence that an injury occurred. *Artis v. Fibre Metal Products* (1983), 115 Ill. App. 3d 228, 450 N.E.2d 756.

██ Because of the conflicting testimony, there was sufficient evidence for the jury to conclude that the feeder was not unreasonably dangerous or that the feeder did not proximately cause plaintiff's injuries. Plaintiff's expert testified that the feeder was unreasonably dangerous because the clean-out hole allowed access to the nip point and that the feeder failed to comply with all applicable industry standards. Such evidence was substantially countered, however, by Navistar's expert, who testified that the nip points were adequately shielded and conformed to the relevant industry standards. Although the experts offered contrary opinions, the weight to be assigned to each expert was for the jury to decide. (*Rybak v. Provenzale* (1989), 181 Ill. App. 3d 884, 537 N.E.2d 1321.) Where experts offer divergent conclusions, as here, the jury is entitled to believe one expert over the

other. (See *Loitz v. Remington Arms Co.* (1988), 177 Ill. App. 3d 1034, 532 N.E.2d 1091; *Martin v. Zucker* (1985), 133 Ill. App. 3d 982, 479 N.E.2d 1000.) We cannot conclude that the evidence so overwhelmingly favored plaintiff that the verdict for Navistar cannot stand.

We find that plaintiff is entitled to a new trial on the issue of Navistar's liability. Plaintiff agrees that he cannot recover a judgment from Navistar in excess of $122,500, the amount deducted from the judgment entered against Wild.

Accordingly, the judgment in favor of Navistar is reversed, and the cause is remanded for a new trial in accordance with the holdings of this opinion.

Reversed and remanded.

RAKOWSKI, P.J., and LaPORTA, J., concur.