JOHANNA KING, Special Adm'r of the Estate of Robert King, Deceased, Plaintiff-Appellee, v. JOHNNY R. CLEMONS, JR., Defendant-Appellant.

Fifth District    No. 5—92—0078

Opinion filed June 17, 1994.—Rehearing denied July 28, 1994.

RARICK, J., concurring in part and dissenting in part.

Richard J. Behr and Stephen C. Mudge, both of Reed, Armstrong, Gorman, Coffey, Thomson, Gilbert & Mudge, of Edwardsville, for appellant.

Thomas W. Burkart, of Burkart Law Offices, of Hamel, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:
Defendant, Johnny R. Clemons, Jr., appeals from a judgment in favor of plaintiff, Johanna King, special administrator of the estate of Robert King, deceased (plaintiff Charles King died before trial and is not a party to this appeal), in a wrongful death action plaintiff filed after her son, Robert King (decedent), was killed while he was riding in defendant's car. The jury found defendant to be negligent and returned a verdict for plaintiff in the amount of $334,856.97. The circuit court of Madison County entered judgment on the verdict and denied defendant's post-trial motion. In this appeal, defendant presents the following issues for review: (1) whether the trial court erred in allowing plaintiff's motion to bar defendant's evidence of a defective steering column; (2) whether the trial court erred in not sustaining defendant's objection to comments made by plaintiff's counsel in closing argument; (3) whether the trial court erred in instructing the jury on damages and submitting plaintiff's verdict form; and (4) whether there was any evidence to support plaintiff's claim that the decedent contributed income to plaintiff prior to his death. We affirm.

On March 16, 1989, defendant came home from high school and found decedent waiting for him. Defendant and decedent were friends, and decedent had spent the previous night at defendant's house. Defendant had planned to take his recently purchased 1973 Pontiac Trans Am to an exhaust shop in Staunton for some repairs that afternoon. Since decedent was still at the house, he decided to ride to Staunton with defendant. Defendant had driven the car on one prior occasion and experienced no problems.

Defendant testified that to get to Staunton from Livingston, where defendant lived, he had to drive on Livingston Avenue. On Livingston Avenue, he drove through one curve, drove straight for one-eighth to one-quarter mile, and then had to drive through a

second curve. On the straightaway, defendant was driving approximately 50 miles per hour. As he approached the second curve, he took his foot off the accelerator, but the pedal stuck. Defendant testified that he tried to pry the gas pedal from its position with his feet but was unable to do so. Defendant then pumped the brakes and was able to slow the car down to approximately 40 miles per hour. Defendant also turned the ignition off, hoping that would slow the car down, to no avail. At the curve, the car went off the road, across a grassy area, and crashed into a tree, at which time decedent was fatally injured.

Although defendant wanted to present evidence that the steering wheel locked pursuant to a defective condition in the steering column, the trial court barred him from doing so. Prior to trial, plaintiff filed and served on defendant a document entitled "Notice To Preserve Material Evidence." That document stated that plaintiff intended to use and examine the 1973 Pontiac defendant was driving at the time of the accident, and plaintiff "required defendant to preserve said evidence and not otherwise dispose of or *** alter said evidence." Upon receipt of that document, defendant's attorney placed it in the client file. Sometime thereafter, defendant changed attorneys. In the course of preparing the defense, defendant's second attorney hired an engineer to remove the steering column from the car for an examination.

On the first day of trial, plaintiff filed a motion to bar defendant from introducing any evidence concerning the condition of the steering column. Plaintiff argued that defendant's removal of the steering column violated the "Notice To Preserve Material Evidence." At that time, defense counsel stated that he was unaware of the document but acknowledged that he had the responsibility of thoroughly reviewing the file after he took over the case. The trial court granted plaintiff's motion to bar evidence and entered an order preventing defendant from introducing any evidence or raising any defense regarding the condition of the steering column. This order was entered as a sanction pursuant to Supreme Court Rule 219(c) (134 Ill. 2d R. 219(c)).

Defendant first argues on appeal that the trial court erred in granting plaintiff's motion to bar all evidence concerning the steering column. Supreme Court Rule 219(c) provides that courts may, upon motion, enter sanctions against a party for unreasonably refusing to comply with discovery requests. (134 Ill. 2d R. 219(c).) Two such sanctions are: (1) that the party be debarred from maintaining any particular claim, counterclaim, third-party complaint, or defense relating to that issue, and (2) that a witness be barred from testifying

concerning that issue. (134 Ill. 2d Rules 219(c)(iii), (iv).) The imposition of these sanctions rests largely in the discretion of the trial court and will not be disturbed on review unless that discretion was abused. *Graves v. Daley* (1988), 172 Ill. App. 3d 35, 37, 526 N.E.2d 679, 680; *Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 1056, 473 N.E.2d 444, 449.

■ Plaintiff notified defendant of her interest in keeping the automobile intact by sending defendant the "Notice To Preserve Material Evidence," but defendant's action of removing the steering column denied plaintiff the opportunity to examine or use the automobile as it was after the crash. Although defendant argues that the trial court's ruling was unjust, we disagree. The trial court was in the best position to assess the appropriate sanction for defendant's disregard of plaintiff's notice to preserve. After a thorough examination of the record, we find no abuse of discretion by the trial court and thus will not disturb its ruling on this issue.

Defendant next contends that the trial court erred in not sustaining his objection to comments made by plaintiff's counsel during closing argument. When the trial court granted plaintiff's motion to bar any evidence relating to the steering column, it was agreed that plaintiff could not capitalize on the order by referring to or challenging defendant on the inadmissible evidence. Defendant argues that plaintiff violated that agreement by making certain statements during closing argument. Defense counsel objected at trial to the following comment regarding defendant's actions when he approached the curve in the road:

> "[Defendant] was at a point in the road where *** the speed limit changed from 55 miles an hour to 40 miles an hour for the curve so he had gotten his speed down to an acceptable speed for negotiating the turn. Why not merely go through the turn at 35 miles an hour?"

After the parties approached the bench on defendant's objection, plaintiff's counsel continued his closing argument, making the following statements:

> "Anyway, when he gets to the position where he is at the curve in the road and is going 35 miles an hour at a location where a 40 mile per hour is placed, he drives straight ahead.
>
> Now, the question for you to resolve is, is that what a reasonable person would do under the circumstances. And if you decide a reasonable person traveling less than the posted speed limit and having available the ability to downshift, the ability to use an emergency brake, having available to them any other avenue of handling the car, if you feel that a reasonable person would not

drive straight ahead into a tree and leave the roadway, then that is negligence. ***

Having met those three burdens which she has to prove—and the defense, by the way, offered no contradictory evidence on any of these, in fact offered no witnesses whatsoever ***."

Defendant contends that the above remarks were inflammatory and capitalized on the court's order of debarment. Defendant was unable to rebut the comments without violating the court's order himself and now claims that the comments were so prejudicial that he was denied a fair trial.

■ Improper comments generally do not constitute reversible error unless the other party has been substantially prejudiced. (*Soto v. E.W. Bliss Division of Gulf & Western Manufacturing Co.* (1983), 116 Ill. App. 3d 880, 892, 452 N.E.2d 572, 581.) The trial court is in a superior position to evaluate the effect of the alleged improper comments upon the jury, and its ruling will not be disturbed by a reviewing court absent an abuse of discretion. (*Soto*, 116 Ill. App. 3d at 892-93, 452 N.E.2d at 581.) Although plaintiff's counsel's comments may have been improper, we do not conclude that they prejudiced defendant to the extent that he was denied a fair trial. The trial judge was in the best position to evaluate the comments' effect on the jury, and it determined that the comments, if improper, did not prejudice defendant. After review of the record, we do not find the trial court's ruling to be an abuse of discretion and will not disturb it in this appeal.

The next issue we address is whether the trial court erred in using plaintiff's tendered jury instruction regarding damages and plaintiff's tendered verdict form. Although plaintiff makes an argument that defendant waived this issue on appeal, we choose to address the merits of defendant's argument. Plaintiff's instruction No. 22 stated, in pertinent part:

"If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate Johanna King, mother of the decedent, for the pecuniary loss proved by the evidence to have resulted to the mother, from the death of the decedent. 'Pecuniary loss' may include loss of money, goods, services and society.

Where a decedent leaves his mother, the law recognizes a presumption that the mother of the decedent has sustained some substantial pecuniary loss by reason of the death."

The jury was also given the instruction submitted by defendant, which states, in pertinent part:

"In calculating the amount of pecuniary losses consisting of money, goods or services, you must not simply multiply the life

expectancies by the annual losses. Instead, you must determine their present cash value. 'Present cash value' means the sum of money needed now, which, together with what that sum may reasonably be expected to earn in the future, will equal the amount of those pecuniary losses at the times in the future when they will be sustained.

Damages for loss of society are not reduced to present cash value."

The verdict form given to the jury provided two entries for plaintiff's damages, one for pecuniary losses and a separate one for loss of society. Defendant argues that the jury was misled and confused by the verdict form containing the two entries. We disagree. Section 2—1109 of the Civil Practice Law provides, in pertinent part:

"In every case where damages for injury to the person are assessed by the jury the verdict shall be itemized so as to reflect the monetary distribution among economic loss and non-economic loss ***." (735 ILCS 5/2—1109 (West 1992).)

Additionally, our supreme court has held that although damages for economic losses should be reduced to present cash value, damages in a wrongful death action for loss of future society should not be reduced to present cash value. (*Drews v. Gobel Freight Lines, Inc.* (1991), 144 Ill. 2d 84, 578 N.E.2d 970.) A reviewing court will not reverse a cause on the basis of an improper jury instruction unless it is able to conclude that the instruction clearly misled the jury. (*Phelps v. Chicago Transit Authority* (1991), 224 Ill. App. 3d 229, 234, 586 N.E.2d 352, 355.) The relevant determination is whether the instructions considered as a whole were sufficiently clear so as not to mislead the jury. *Phelps*, 224 Ill. App. 3d at 234, 586 N.E.2d at 355.

■ We are not able to conclude that the instructions and the verdict form given in this case clearly misled the jury. Looking at the instructions tendered by both parties as they were given to the jury, we find that, as a whole, they were sufficiently clear in stating the law, and there was no reversible error by the trial court.

■ The final issue we must address is whether the trial court erred in permitting plaintiff to recover for decedent's future lost wages. In *Bullard v. Barnes* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228, the court held that "there can be no presumption of loss of earnings upon the death of a child since such a presumption represents an aberration from, rather than a reflection of, the typical family experience." (*Bullard*, 102 Ill. 2d at 517, 468 N.E.2d at 1234.) The court further stated that "[a]lthough the presumption of a loss of earnings no longer applies, in the rare case where the child earned income that was used to support the family these facts may, of course, be

proved and a recovery had." (*Bullard*, 102 Ill. 2d at 517, 468 N.E.2d at 1234.) Plaintiff presented uncontroverted evidence that the decedent had been employed periodically in the four to five years prior to his death, that on two occasions decedent gave plaintiff money to pay her bills for a total of $900, and that decedent occasionally contributed groceries to the household. There was also testimony that decedent performed various services around the house for his parents. We find this evidence sufficient to present the matter to the jury for determination of what decedent's economic contributions were to the family, if any.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

WELCH, J., concurs.

JUSTICE RARICK, concurring in part and dissenting in part:

Although not specifically addressed by the majority in its opinion, I agree the rules of discovery are broad enough to accommodate plaintiff's notice to preserve. And, because the rules recognize notices such as plaintiff's, I therefore reluctantly concur in upholding the sanction imposed in this instance. (See *American Family Insurance Co. v. Village Pontiac-GMC, Inc.* (1992), 223 Ill. App. 3d 624, 626-28, 585 N.E.2d 1115, 1118-19; *Graves v. Daley* (1988), 172 Ill. App. 3d 35, 38-39, 526 N.E.2d 679, 681-82.) I believe the more appropriate method, however, would have been to secure a protective order explicitly detailing the handling, testing, and preservation of the vehicle involved in the accident. (See *Klick v. R.D. Werner Co.* (1976), 38 Ill. App. 3d 575, 578, 348 N.E.2d 314, 317.) Such protective orders not only preserve the evidence and guide the parties, they also "further the principle that litigation is best served when each party knows as much about the controversy as is reasonably practicable." *Klick*, 38 Ill. App. 3d at 579, 348 N.E.2d at 317.

Recognizing this, however, I must dissent as to the majority's treatment of defendant's objections to plaintiff's closing argument. The parties agreed, once evidence relating to the steering column was barred, that plaintiff could not "capitalize" on the order by referring to or challenging defendant on the inadmissible evidence. Plaintiff's counsel, however, did exactly that; he capitalized on the inadmissible evidence by suggesting a reasonable person would have attempted to negotiate the turn in the roadway. The only way defendant could have met this challenge would have been by violating the

court's order. Clearly defendant was prejudiced, and, in my mind, the trial court's ruling to the contrary constituted an abuse of discretion. (See *Wille v. Navistar International Transportation Corp.* (1991), 222 Ill. App. 3d 833, 837-39, 584 N.E.2d 425, 428-29.) Because the majority concludes otherwise, I must dissent to this portion of the disposition.